BURROUGHS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72023. Filed November 30, 1959.

*Thomas G. Long, Esq.*, for the petitioner.
*Robert B. Pierce, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent has determined a deficiency of $301,672.68 in the income tax of the petitioner for 1953. The only issues presented by the pleadings and not disposed of by stipulation of the parties are the correctness of the respondent's action in determining (1) that petitioner was not entitled under the provisions of section 23 (o) and (q) of the Internal Revenue Code of 1939 to deduct any amount as a contribution on account of petitioner's conveyance in 1953 of certain real estate to Burroughs Foundation Auxiliary Trust, (2) that the petitioner was not entitled under the provisions of section 23(a)(1)(A) of the Code to deduct an amount of $1,188.04 accrued by petitioner in 1953 as rent due Burroughs Foundation Auxiliary Trust, and (3) that Burroughs Foundation Auxiliary Trust is not exempt from Federal income tax under the provisions of section 101(6) of the Code.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

The petitioner is a Michigan corporation with its principal business office in Detroit, Michigan. It filed its Federal income tax return for 1953 with the director of internal revenue in Detroit, Michigan.

The petitioner, formerly Burroughs Adding Machine Company, was organized in 1905 and is engaged in the production and sale of business machines.

Under date of December 20, 1951, the petitioner under its then name, Burroughs Adding Machine Company, as settlor, and the Northern Trust Company, an Illinois corporation of Chicago, Illinois, as trustee, executed a trust indenture, sometimes hereinafter referred to as the indenture of December 20, 1951. Approval of the form of the indenture, authority for its execution on behalf of the petitioner, payment to the trustee of the initial corpus of the trust, $500,000, and the appointment of the four officers or employees of the petitioner who were to constitute the committee provided for in

section 2 of the indenture were contained in resolutions adopted by the petitioner's board of directors at a meeting held on December 20, 1951.

The indenture of December 20, 1951, contained the following provisions:

*WITNESSETH:*

THAT the Settlor, in consideration of One Dollar ($1.00) in hand paid, and other good and valuable considerations, the receipt whereof is hereby acknowledged, does hereby transfer, assign, convey and quitclaim to the Trustee, and to its successor in trust, the property described in Schedule "A" hereto attached [a check for $500,000 drawn by petitioner on Northern Trust Company and made payable to Northern Trust Company, Trustee for Burroughs Foundation];

To HAVE AND To HOLD the said property and any other property of any kind which the Trustee may at any time hereafter hold or acquire pursuant to any of the provisions hereof (all of which property is hereinafter collectively referred to as the "trust estate"), subject to the trusts, purposes and conditions hereinafter set forth:

*SECTION 1.* The trust hereby provided for shall be known as the "BURROUGHS FOUNDATION."

*SECTION 2.* A Committee of four adult members who shall be officers, directors and/or employees of Settlor [and sometimes hereinafter referred to as the Burroughs Corporation Committee], is hereby constituted to be appointed by the Board of Directors of Settlor. Committee members shall serve without compensation and shall hold office until their successors are appointed by said Board and qualify. Each person so appointed an original or successor member shall qualify upon filing with the Trustee his acceptance so to act, together with a certified copy of the Resolution of the Board of Directors of Settlor by which the appointment was made.

The Committee may designate one of its members as Chairman and shall choose a Secretary who may but need not be a member of the Committee. Committee action may be taken either at a meeting or in writing without a meeting and meetings shall be held at such times and places and on such notice as the Chairman or Secretary of the Committee shall determine. The Secretary shall, among other duties, notify Committee members of the time and place of meetings, canvass Committee members on matters to be transacted without a meeting, transmit the actions or directions of the Committee to the Trustee, advise the Trustee in writing of the names and addresses of the Committee members from time to time acting, and keep a complete record of the proceedings of the Committee.

Any Committee member may resign at any time and such resignation shall be by instrument in writing delivered to the Chairman or the Secretary of the Committee and to the Trustee, and any Committee member may be removed from office by the Board of Directors of Settlor, in which event notice thereof shall be given to the Chairman or Secretary of the Committee and the Secretary shall then give written notice thereof to the Trustee.

All provisions of this Indenture relating to the Committee shall apply to all members from time to time acting. All powers of the Committee (except the power set forth in Section 13 hereof) shall be exercised by majority action, and if at any time or times the Committee shall be evenly divided, the decision of the Chairman shall control. Any decision or action by the Committee shall be binding on all persons and not subject to review by any court. No personal

liability shall attach to any member of the Committee except for gross negligence or willful wrongdoing, it being the intention of this provision to protect the Committee members from personal liability based solely on errors of judgment. The status of each Committee member hereunder shall be that of a fiduciary, and no member shall have any power or authority under any circumstances to act hereunder in a non-fiduciary capacity.

SECTION 3. The Trustee shall pay the entire net income from the trust estate and any part or all of the principal thereof pursuant to the direction of the Committee, but only for religious, charitable, scientific, governmental, literary or educational purposes. A beneficiary hereunder may be a corporation, trust, community chest, governmental unit or division thereof, fund or foundation created or organized in the United States or under the laws of the United States or of any State of the United States, organized and operated exclusively for charitable, scientific, governmental, literary or educational purposes (including the granting of scholarships for deserving students), no part of the net earnings of which enures to the benefit of any private shareholder or individual and no substantial part of the activities of which is the carrying on of propaganda or otherwise attempting to influence legislation.

SECTION 4. The Committee shall from time to time determine the beneficiary or beneficiaries of the trust estate. The Trustee shall, subject to the provisions of this Indenture, make payment in such amount or amounts to such beneficiary or beneficiaries and in such manner and at such times as shall be directed by the Committee in writing, and the Trustee shall not be bound to inquire into the proceedings of the Committee, but shall act solely on such written direction.

SECTION 5. If during any period or periods of time there shall be no Committee qualified and acting hereunder, the Trustee during such period or periods shall make payment of the entire net income from the trust estate as follows:

(a) At convenient intervals and at least quarterly, to THE UNITED FOUNDATION, 607 Shelby Street, Detroit, Michigan, its successor or successors, for its general purposes; or

(b) In the event of the termination of said THE UNITED FOUNDATION and its successors by consolidation or otherwise, or the inability or refusal for other reasons of said THE UNITED FOUNDATION, or its then successor, to accept said payments in whole, then on application of the Trustee within sixty (60) days after ascertaining said termination, inability, or refusal, to a court of competent jurisdiction, the income of the trust estate shall be applied *cy pres* pursuant to the order or orders of said court.

SECTION 6. The Settlor hereby surrenders and releases to the Trustee and forever divests itself of any and every right, privilege, option or power to revoke the trust estate or any part thereof; to borrow monies against the trust estate; to pledge, hypothecate, make purchases from, or otherwise deal with the trust estate; to receive any dividends or other distributions thereunder; to exercise any other rights, powers, options or privileges under or in relation to the trust property; and the Settlor covenants and agrees that neither any act nor attempted act on its part or behalf or on the part or behalf of its successors or assigns shall in any way defeat the transfer and delivery of the trust property to the Trustee or the trust hereby established and declared, and that no part of the trust property or the proceeds, income or avails thereof shall by virtue of any act or attempted act whatsoever revert to the Settlor, its successors or assigns, or be diverted from the charitable purposes for which the trust is established hereunder.

*SECTION 7.* The Trustee shall hold, manage, lease, care for and protect the trust estate and collect the income therefrom, all in accordance with its best judgment and discretion, being fully authorized to cause any securities or other personal property belonging to the trust estate to be held or registered in its name or in the name of its nominee or in such other form as it deems best without disclosing the trust relationship.

Said Trustee is fully authorized to invest and reinvest the trust estate in bonds, stocks, mortgages, notes and/or other personal property, irrespective of any statutes or rules of law limiting the investment of trust funds. The Trustee is given full power to sell at public or private sale and convey any and all of the trust property and any reinvestments thereof from time to time for such price and upon such terms as it shall see fit, and no purchaser shall be obliged to see to the application of any purchase money. The Trustee may vote either in person or by general or limited proxy, or refrain from voting, any corporate securities for any purpose. The Trustee may exercise or sell any subscription or conversion rights; it may consent to or join in any voting trusts, reorganizations, consolidations, mergers, foreclosures and liquidations, and in connection therewith may deposit securities with or under the direction of any protective committee under such terms as the Trustee may deem advisable, and may accept and hold any securities or other property received through the exercise of any of the foregoing powers. The Trustee is authorized to settle, compromise, contest, prosecute or abandon claims in favor of or against the trust estate as it may deem advisable. For the purposes aforesaid, the Trustee may execute and deliver all proper and necessary instruments and may give full receipts and discharges. The Trustee shall also have the power to determine, irrespective of statute or rule of law, how all receipts and disbursements, including the Trustee's compensation, shall be credited, charged or apportioned as between income and principal, and the decision of the Trustee shall be final and not subject to question by the Committee, the Settlor, or any beneficiary of the trust.

*SECTION 8.* The Trustee shall render to the Committee statements of account of its receipts and disbursements as Trustee hereunder at least semiannually. The Trustee shall be entitled to receive a fair and just compensation for its services hereunder and shall also be reimbursed for all reasonable expenses incurred in the management and protection of the trust estate.

*SECTION 9.* The Committee shall be fully authorized at any time to form a corporation under the laws of any State of the United States and by writing to direct the Trustee to transfer and assign all or any part of the assets and liabilities of the trust estate to such corporation. The purposes of such corporation shall be the same as the purposes of the trust. The officers and directors of such corporation shall be elected only from Committee members from time to time acting or persons from time to time eligible for Committee membership. The provisions of this Indenture, so far as applicable in the discretion of the Committee, shall be incorporated into the Articles of Incorporation or By-laws of such corporation.

The Board of Directors of such corporation shall have the power at any time to dissolve and liquidate such corporation and cause the assets and liabilities thereof to be transferred and assigned to any trust company or bank having a combined capital and surplus of not less than Five Million Dollars ($5,000,000) and located in a city of the United States having a population of not less than one million (1,000,000). On acceptance of such transfer from such corporation, said transferee shall act as Trustee hereunder to the same

extent and with the same rights, titles, powers and discretions given to the originally named Trustee.

SECTION 10. Any Trustee at any time acting hereunder may resign at any time by written notice to the Committee, or the Committee may remove any such Trustee hereunder by written notice to the Trustee.

In the event of the removal, resignation, refusal or inability to act of any Trustee acting or appointed to act hereunder, the Committee may appoint as successor Trustee any bank or trust company having a combined capital and surplus of not less than Five Million Dollars ($5,000,000) which shall be located in a city of the United States having a population of not less than one million (1,000,000).

Any successor Trustee shall be clothed and vested with all the duties, rights, titles and powers, whether discretionary or otherwise, as if originally named as Trustee. No successor Trustee shall be liable or responsible in any way for any acts or defaults of any predecessor Trustee, nor for any loss or expense from or occasioned by anything done or neglected to be done by any predecessor Trustee, but such successor Trustee shall be liable only for his or its own acts and defaults in respect to property actually received by him or it as such Trustee; and with the consent of the Committee, the successor Trustee may accept the account rendered and the assets and property delivered to him or it by the predecessor Trustee as a full and complete discharge to the predecessor Trustee, and shall incur no liability or responsibility to any beneficiary under this Indenture by reason of so doing.

Notwithstanding that the trust estate will be administered by a trust company or bank located outside of the State of Michigan, all questions pertaining to the validity, construction and administration thereof shall be determined in accordance with the laws of the State of Illinois, but this provision shall not prevent the then acting Corporate Trustee from removing the trust assets or any part thereof outside of the jurisdiction of the State of Illinois at any time and so often as it deems advisable.

SECTION 11. With the consent of the Trustee or the Board of Directors of the corporation described herein in the event that the Trustee shall have transferred and assigned the trust assets and liabilities to such corporation, said Settlor or any individual or other person, association, corporation, trust or organization shall have power to assign, transfer and deliver additional personal property to the Trustee or to said corporation to be held, managed, invested and distributed as part of the trust estate or as part of the property of said corporation as the case may be and subject, in the case of the trust, to all the terms and conditions thereof.

SECTION 12. Settlor declares that the Trust created hereby shall be administered by the Committee so that only such contributions to beneficiaries shall be made therefrom as would be recognized at the time the contributions are made as proper deductions from income under the applicable provisions of the United States Internal Revenue Code.

SECTION 13. The Settlor hereby states that it has been advised that it could retain herein unlimited powers of revocation, amendment or alteration, but nevertheless it desires to and hereby does expressly waive all right and power to revoke, amend or alter this Indenture or the terms of the trust hereby created in any respect, either in whole or in part; provided, however, that the Committee by a unanimous vote may at any time declare the Trust to have served its purpose and so certify to the Trustee, whereupon the Trust shall terminate and the entire Trust Estate, less charges and expenses of the

Trustee, shall be paid over to such beneficiaries and in such amounts as are then determined and directed by the Committee in the manner and under the conditions set forth in Sections 3, 4 and 12 hereof.

Subsequent to the execution of the indenture of December 20, 1951, the Northern Trust Company, as trustee thereunder, made application to the respondent for a ruling as to the exemption of Burroughs Foundation from Federal income tax under section 101(6) of the 1939 Code. Thereafter, in a letter dated April 24, 1953, addressed to the Northern Trust Company, as trustee, the respondent ruled that Burroughs Foundation was exempt from Federal income tax under that section of the 1939 Code and that contributions made to the foundation were deductible by the donors in computing their taxable net income in the manner and to the extent provided by section 23 (o) and (q) of the 1939 Code. At the time of the execution of the indenture of December 20, 1951, the petitioner owned approximately 585 acres of real estate situated in Michigan, known as Burroughs Farms, which were currently, and for some time prior thereto had been, devoted to recreational purposes for petitioner's employees, and which will be referred to hereinafter more fully. Following the execution of the indenture of December 20, 1951, and during 1952 and 1953, the petitioner considered making a transfer of Burroughs Farms under some arrangement whereby it could continue to have the property available to it for use for recreational purposes by its employees and whereby it could reacquire the property if it later desired.

In November 1952, the petitioner approached the Northern Trust Company, trustee of Burroughs Foundation, respecting the matter of transferring Burroughs Farms to the Trust Company as a contribution to the Burroughs Foundation and then obtaining from the Trust Company a lease on Burroughs Farms for a term of years. The Trust Company pointed out to petitioner that section 6 of the indenture of December 20, 1951, provided, in part, that—

The Settlor hereby surrenders and releases to the Trustee and forever divests itself of any and every right, privilege, option or power to * * * make purchases from, or otherwise deal with the trust estate * * *

and stated that if it be assumed that the phrase "or otherwise deal with the trust estate" included the proposed leaseback, the Trust Company nevertheless would be willing to go along with the transaction on the assumption that the lease would be bona fide and that the net rent would represent a fair rental for the property. The Trust Company expressed the hope that the lease would not be for "too long a term." The Trust Company further stated that it understood that the laws of Michigan did not permit an out-of-State bank to hold title or act as trustee with respect to Michigan real

estate. The Trust Company suggested that if the arrangement went forward, title be taken in the name of one of its officers, who would act as nominee of the Trust Company and who, simultaneously with taking title, would execute a declaration of trust, declaring himself trustee of the property for the benefit of the trust, and at the same time execute a deed in blank conveying the property back to the trust. The Trust Company stated that the foregoing was the arrangement customarily used by it in taking title to real estate situated outside of the State of Illinois.

Subsequently the petitioner considered the formation of a "Michigan not-for-profit corporation" with officers of the Northern Trust Company as incorporators and directors thereof, the transfer of Burroughs Farms to such corporation and the leasing by that corporation of the property to the petitioner. In September 1953, the petitioner approached the Northern Trust Company about such an arrangement and was furnished by the Trust Company the names of certain of its officers who were available for becoming incorporators and directors of the proposed corporation. In addition the petitioner was furnished an outline of provisions for a leaseback from the proposed corporation to petitioner of the property.

On October 12, 1953, the board of directors of petitioner adopted the following resolution:

RESOLVED, that the officers of this Corporation be and hereby are authorized, at such time as they may deem beneficial, to make a gift of the real estate known as Burroughs Farms situated approximately three miles westerly of the Village of Brighton, Michigan, or the equivalent thereof at their discretion, to or for the benefit of the Trustee of Burroughs Foundation as a charitable contribution thereto and that said officers be and hereby are authorized to execute and deliver all deeds, instruments and documents and to do any and all other things which may be necessary or desirable to complete such gift either directly or indirectly by this Corporation to or for the benefit of said Trustee of Burroughs Foundation.

Thereafter, counsel for the petitioner by letter dated November 19, 1953, advised petitioner as follows:

The matter of organizing a non-profit organization to take and hold the property known as Burroughs Farms has been given quite extended consideration. It is noted that the resolution of the Board of Directors of Burroughs Corporation was that the conveyance was to be made to the Trustee of Burroughs Foundation. It was found this could not be done because the Indenture of Trust creating Burroughs Foundation limits the property to be received and held to personal property. To now organize a corporation solely to hold Burroughs Farms and pay over the rentals, etc. therefrom will build up a somewhat cumbersome machinery to handle a simple operation. It is suggested that it would be much simpler to create a foundation auxiliary to the present Burroughs Foundation to hold the Burroughs Farms and pay over the rentals, etc. to the present Burroughs Foundation. The trust instrument creating the auxiliary foundation could be quite simple, referring to and attaching a copy of the Indenture of Trust of the present Burroughs Founda-

tion and making as Trustees of the auxiliary foundation two or three officers of the Trustee of the present Burroughs Foundation. The Committee under the present Burroughs Foundation could have power to name successor trustees in case of vacancies from any cause. This would be a most simple way of handling the problem and by reason of the reference to and attaching of the Indenture of Trust of the present Burroughs Foundation should readily be accepted and passed by the Commissioner of Internal Revenue.

The problem of how the Burroughs Farms could be gotten back if by reason of change of law or otherwise it at any time became desirable to discontinue the operation of the present Burroughs Foundation has been given much consideration. The making of the conveyance upon condition subsequent whereby Burroughs Farms might revert was tried. This will work as far as concerns allowance of the conveyance out is concerned but it is doubtful if there could be a condition of continuing tax exemption of income in the future. It would be possible to give Burroughs Corporation the option to buy back on some basis not less favorable than the amount of deduction from income tax allowed as the value of the property in the year of conveyance to the auxiliary foundation. It does not seem proper for Burroughs Corporation to wholly divest itself of all possibility of ever again itself owning and controlling Burroughs Farms. I question whether good management and sound judgment would warrant the Directors in so doing irrespective of any present tax advantage there might be. It is largely for this reason that the option to buy back is suggested.

In December 1953, Don H. McLucas and Kenneth F. Hoffmaster, both of Chicago, Illinois, were officers of the Northern Trust Company. Under date of December 21, 1953, petitioner, as settlor, and McLucas and Hoffmaster, as trustees, executed a trust indenture, sometimes hereinafter referred to as the indenture of December 21, 1953, which contained the following provisions:

### WITNESSETH:

The Settlor heretofore, under its then name of Burroughs Adding Machine Company, made and executed to and with The Northern Trust Company, an Illinois corporation, of Chicago, Illinois, an Indenture of Trust bearing date December 20, 1951, creating a trust designated "Burroughs Foundation." A photostatic copy of one of the executed originals of said Indenture is hereto attached. The trust thereunder is now in full effect and operation. The said trust is by the terms of said Indenture not subject to revocation in whole or in part or any amendment or change whatsoever. The said trust was by letter of the Commissioner of Internal Revenue (T:S: EO3–MLS) dated April 24, 1953, addressed to said Trustee, ruled to be exempt from Federal income tax under Internal Revenue Code Section 101(6) and contributions thereto deductible by donors under Internal Revenue Code Section 23 (o) and (q) and gifts and legacies of property also ruled to be non-taxable.

The said trust thereunder is by the terms of said Indenture limited to personal property. Settlor now desires to subject to the trust for the same objects and purposes real property as well as personal property.

NOW, THEREFORE, Settlor in consideration of One ($1.00) Dollar in hand paid and other good and valuable considerations, receipt whereof is hereby acknowledged, does hereby transfer, assign, convey and quitclaim to the Trustees, and successors in trust, the real property consisting of 585 acres of land,

more or less, in Genoa Township (2 North, Range 5 East), Livingston County, Michigan, more particularly described in a deed to the Trustees as grantees, executed and delivered concurrently herewith, TO HAVE AND TO HOLD the said real estate and any other property of any kind which the Trustees may at any time hereafter hold or acquire pursuant to any of the provisions hereof (all of which property is hereinafter collectively referred to as the "Trust Estate" which shall be known as "Burroughs Foundation Auxiliary Trust"), upon and subject to the trusts, purposes and conditions set forth in said Indenture of Trust of December 20, 1951, which is hereby made a part hereof with like effect as if the words and figures thereof were herein set forth at length, with, however, such changes and additions as are herein specifically set forth, but none other.

The changes in and additions to said Indenture of Trust of December 20, 1951, to be operative in respect to property held by the Trustees hereunder, are as follows:

1. The Trust Estate shall include any and all kinds and nature of property which may come to or be acquired by the Trustees, whether real, personal or mixed, and wherever property or personal property is mentioned in said Indenture of December 20, 1951, the same shall for the purposes of this Indenture include all other kinds and nature of property aforesaid.

2. Trustee wherever appearing in said Indenture of December 20, 1951 shall for the purposes of this Indenture include the plural as well as the singular.

3. The persons constituted, appointed and acting from time to time as the Committee under Section 2 of said Indenture of December 20, 1951, shall be the like Committee under this Indenture.

4. The power of sale under the third sentence of Section 7 of said Indenture of December 20, 1951 shall in relation to the 585 acres of real property conveyed by the Settlor to the Trustees hereunder concurrently with the execution and delivery hereof be subject to the limitation that any sale of said 585 acres, or any part thereof, shall require the precedent approval of the Committee constituted by Section 2 of said Indenture of December 20, 1951. The Trustees are fully authorized to retain the real property conveyed to it concurrently with the execution of this Indenture and any other property which may be conveyed and delivered to the Trustees hereafter by the Settlor, even though said real property or such other property, shall not be of a type of quality nor constitute a diversification usually considered proper for trust investments. The Trustees may employ such agents, custodians, managers, and attorneys, and may delegate to any such agent, custodian, manager, or attorney such of their powers as the Trustees consider desirable and pay to any such agent, custodian, manager, or attorney, reasonable compensation for his or its services.

5. The two persons named in the commencement hereof each is an officer of the corporate Trustee named in said Indenture of December 20, 1951, and so long as the trust under said Indenture of December 20, 1951 shall continue and there shall be a corporate Trustee thereof there shall be two Trustees hereunder and each shall be a natural person and an officer of such corporate Trustee. Any individual ceasing to be such officer shall cease to be a Trustee hereunder as soon as a successor shall be appointed as provided in Section 10 of said Indenture of December 20, 1951. If the corporate Trustee named therein ceases to be Trustee thereunder, the officers of said corporate Trustee at such time serving as Trustees hereunder shall cease to be such Trustees as soon as successors shall be appointed as provided in Section 10 of said Indenture of December 20, 1951. If the trust under said Indenture of December 20, 1951 shall be terminated, the successor Trustees (immediate or remote) ap-

pointed hereunder may be a corporate Trustee and a natural person who is an officer of such successor corporate Trustee.

6. The power under Section 10 of said Indenture of December 20, 1951 to appoint successor Trustees shall include the appointment of natural persons as such Trustees. The last sentence of said Section 10 shall for the purposes of this Indenture have substituted therein "Michigan" in place of "Illinois" wherever the latter appears in said Section.

7. The provisions of Section Six (6) of said Indenture of December 20, 1951 shall not preclude, in relation to said 585 acres conveyed to this trust at the creation hereof, the Trustees entering into lease or other contract relations with Settlor except there shall be no sale or contract therefor other than as in the last paragraph of this Indenture provided.

8. If the trust under this Indenture shall be terminated in manner and form as provided in Section 13 of said Indenture of December 20, 1951, the Settlor shall have the right to buy back the 585 acres conveyed to this trust at the creation thereof as aforesaid at and for a sum equal to that allowed by the Federal income tax authorities having jurisdiction in the premises as a deduction from income of the Settlor of the year in which said lands were conveyed by the Settlor to said Trustees.

The reason for the insertion of the provision in paragraph 8 of the indenture of December 21, 1953, whereby the petitioner reserved the right to reacquire Burroughs Farms upon termination of the Burroughs Foundation Auxiliary Trust, was that the petitioner considered that good business judgment required that it should have the right to reacquire the property in case the maintenance of employee benefits dictated that the property should continue to be used as the site of recreational facilities for petitioner's employees. The failure of the indenture to recite a fixed or specified amount, having some relationship to the fair market value of the property, at which the petitioner could reacquire the Burroughs Farms was due to what petitioner considered a business reason, namely, that if some amount had been recited and that amount should not be allowed as a deduction from the income of the petitioner, the petitioner, nevertheless, would be required to pay such amount to the trust upon reacquiring the property, and the petitioner did not desire to be so obligated.

On December 21, 1953, the petitioner executed an instrument in the form of a warranty deed to Burroughs Farms to McLucas and Hoffmaster, as trustees under the indenture of December 21, 1953.

Under date of December 23, 1953, McLucas and Hoffmaster, as trustees under the indenture of December 21, 1953, and the petitioner executed an instrument in the form of a lease, and sometimes hereinafter referred to as a lease, which recited the leasing of Burroughs Farms to petitioner for a period of 25 years from the date thereof, unless sooner terminated, at a stated monthly rental of $4,092.13, or an annual rental of $49,105.56, with an option to petitioner to extend the term for additional periods of 5 years, extending to a total of 30 additional years, at a reduced monthly rental of $1,166.67 plus one-sixth of 1 per cent of the sums of money which the petitioner

might have paid previously as rent. The amount stated as rental was determined by Clifford Zohl, real estate expert for the Northern Trust Company, who was instructed by petitioner to compute the rental on then existing maximum practice in terms of interest. The record is silent as to the amount or rate of interest as well as to all other factors and the method used by Zohl in making his computation.

Burroughs Farms has continued to be held by McLucas and Hoffmaster as trustees, and the petitioner has continued to use the property in the same manner as before December 21, 1953.

The following is a list of the officers, directors, and/or employees of petitioner who serve or have served as the members of Burroughs Corporation Committee appointed by resolution of the board of directors of the petitioner in accordance with the provisions of the indenture of December 20, 1951, together with the dates they served on the committee, the positions they hold or held in petitioner, dates of employment by petitioner, and compensation paid to them by petitioner:

| Member | Dates as members | Position in petitioner | Date of employment | Compensation | |
|--------|------------------|------------------------|--------------------|--------------|---|
| | | | | Effective date | Amount |
| P. G. Kanold | Dec. 51–Nov. 57 | Exec. Asst | 8-1-29 Trans. to Todd Div. 11-1-57. | 12-1-51<br>1-1-52<br>9-1-54<br>1-1-56<br>5-1-56<br>10-1-57 | $11,500<br>12,000<br>13,500<br>14,500<br>15,500<br>18,000 |
| L. W. Bowen | Dec. 51–July 52<br>Nov. 57–Present | Asst. to Pres<br>Asst. Treas. | 1937 | 12-1-51<br>5-1-57<br>1-1-59 | 11,000<br>15,500<br>17,000 |
| T. W. Kimmerly | Dec. 51–Present | Asst. Controller<br>Gen. Traffic Mgr. | 1919 | 12-1-51<br>6-1-52<br>11-1-53<br>5-1-56 | 15,000<br>16,000<br>17,000<br>18,000 |
| E. R. Vollwiler | Dec. 51–July 52 | Asst. Secy | 1937 | 5-1-51 | 11,250 |
| W. A. Durbin | July 52–July 55 | Dir. of Pub. Rel | 1950 Resigned 6-30-55. | 4-1-52<br>1-1-53<br>7-1-54 | 11,000<br>13,000<br>14,500 |
| L. O. Browne | July 52–July 53<br>Nov. 58–Present | Asst. to Pres<br>Asst. Gen. Sales Mgr. | 1940 | 7-1-52<br>1-1-53<br>5-1-58 | 8,000<br>8,500<br>20,000 |
| D. D. Reaser | July 53–Aug. 54 | Asst. to V.P., Mktg. | 1941 Trans. 7-31-54. | 7-1-53 | 12,000 |
| K. T. Bement | Aug. 54–Nov. 58 | Asst. Gen. Sales Mgr.<br>Gen. Sales Mgr. | 1936 | 1-1-53<br>12-1-54<br>2-1-56<br>9-1-56<br>10-1-57 | 16,500<br>18,000<br>20,000<br>24,000<br>26,500 |
| E. T. Littlejohn | July 55–Jan. 59 | Dir. of Pub. Rel | 1948 Resigned 1-31-59. | 7-1-55<br>1-1-56<br>6-1-57<br>6-1-58<br>1-1-59 | 13,000<br>14,000<br>15,000<br>17,000<br>18,900 |
| R. O. Baily | Jan. 59–Present | Dir. of Pub. Rel | 1947 | 1-1-59 | 20,000 |

The Burroughs Corporation Committee is responsible directly to the board of directors of the petitioner, which has the authority to appoint and to remove members of the committee. In addition to acting with respect to contributions made by Burroughs Foundation and Burroughs Foundation Auxiliary Trust, the committee also makes recommendations to the petitioner respecting contributions from its funds. In so functioning the committee acts in accordance with certain approved and established policies and procedure. In accordance with such policies and procedure the committee determines the types of contributions to be made, makes an allocation of contributions among the various types and determines the recipients of contributions and determines the amounts of the contributions such recipients shall receive and the time when they shall receive them.

In each of the years 1954 through 1958 the petitioner transmitted $49,105.56 to McLucas and Hoffmaster, trustees of the Burroughs Foundation Auxiliary Trust, and contributions therefrom were made to recipients, each of whom was duly qualified to receive payments or contributions deductible from the income of the payor or donor under section 170 of the Internal Revenue Code of 1954.

The procedure employed in making payment of the foregoing contributions was as follows: After Burroughs Corporation Committee had determined the recipients and the amount each was to receive, the petitioner prepared the checks therefor, the committee transmitted the checks to McLucas and Hoffmaster who signed them and returned them to the committee who then forwarded them to the intended recipients.

Since they were without authority to act thereon, McLucas and Hoffmaster referred to the petitioner all solicitations from charities directed to Burroughs Foundation Auxiliary Trust received by them.

The petitioner makes contributions directly to tax-exempt organizations other than Burroughs Foundation.

Over the years the petitioner has endeavored to develop constantly better relationships among its employees. Among the means employed in such endeavor is Burroughs Farms, which the petitioner acquired in 1926 or 1927 to provide a recreational area and facilities for its employees and which the petitioner in 1927 established and dedicated as a recreational area for its employees and their families. Continuously since 1927 Burroughs Farms has been used for such purpose and it has the reputation of being one of the best recreational centers in Michigan.

Burroughs Farms consists of approximately 585 acres of land situated in Genoa Township, Livingston County, Michigan, and is approximately 45 miles from Detroit and about 3½ miles west of

Brighton, Michigan. The property has a frontage of approximately 3,200 feet on a lake. One 9-hole golf course and one 18-hole golf course cover approximately 190 acres of the land. Each of the golf courses compares favorably as to layout and maintenance with the better private clubs. A cottage resort area covers about 70 acres. A portion of the land has been developed to provide a variety of other recreational facilities for the petitioner's employees. In addition to cabins provided for employees at nominal rentals and the two golf courses, Burroughs Farms has facilities for outdoor sports, such as tennis, horseshoe, archery, swimming and bathing facilities, fishing, boating, shuffleboard, gun clubs, and allied recreational activities, including a children's playground and a trailer court, as well as provision for entertainment, such as dances, movies, picnic area, restaurant, etc. The remainder of the land is not improved.

At the end of 1953 there were 156 cabins on Burroughs Farms of which 117 were owned by petitioner's employees and the other 39 were owned by petitioner and were held for rental to employees for weekends, vacations, etc. During 1952 through 1958, 53 cabins were repurchased by petitioner from its employees and after having been so repurchased were resold or rented to other of petitioner's employees.

Any employee of petitioner can purchase a cabin on Burroughs Farms or any employee can have a cabin built on the Farms under the supervision and to the specifications of the petitioner's real estate division. When an employee of the petitioner purchases a cabin on Burroughs Farms, an agreement is entered into between petitioner and the employee which provides, in part, that "[t]he Corporation agrees to sell to the Employee one frame cabin known as No.—, located on its property known as Burroughs Farms near Brighton, Michigan," and the employee agrees to buy said cabin. The purchase price may be paid in cash or in installments. The agreement provides that the employee shall acquire no right, title, or interest in the land upon which the cabin stands but shall have the use and enjoyment of the cabin so long as he shall remain in the petitioner's employ. The petitioner also can terminate the employee's rights to a cabin by written demand, but upon termination for any reason the petitioner is required to pay the employee a minimum of 25 per cent of the original purchase price or portion thereof theretofore paid for the cabin, plus the cost price of subsequent approved improvements or the portion thereof theretofore paid by the employee. Basically similar arrangements to purchase cabins located on Burroughs Farms were entered into between the petitioner and its employees both prior to and subsequent to December 21, 1953.

Good employee relationship is of vital importance to petitioner because of the high manpower cost in the petitioner's products. Except in certain departments of certain subsidiaries, petitioner's employees are not represented by a labor union. In those areas in which a vote was taken the petitioner's employees in a National Labor Relations Board election in October 1951 expressed their preference by a majority of 5 to 1 for no union representation. As a result of such an expression of their preference by the employees, petitioner's management determined to continue to work diligently to maintain and improve relationships among all members of the petitioner's organization.

Both prior to and subsequent to December 21, 1953, extensive publicity has been given, and company policy has been issued, to employees from time to time as to their rights and privileges with respect to Burroughs Farms. Although in the operation of Burroughs Farms the petitioner receives income from charges made for food, charges to guests of employees, and fees charged for golf tournaments, etc., it sustains a loss of from $100,000 to $150,000 a year in its operation of the property and during 1953 sustained a loss of approximately $150,000 in such operation.

The petitioner's employees receive compensation and benefits comparable to compensation and benefits of employees of similar business enterprises and during 1951 through 1953 the compensation, including fringe benefits of petitioner's employees was as good as or higher than any comparable position in the Detroit area. The rights and privileges of petitioner's employees to the use of Burroughs Farms were a major fringe benefit both prior to and subsequent to December 21, 1953.

The following is a statement of the net depreciated cost to petitioner of Burroughs Farms on December 21, 1953, as shown by petitioner's books:

| | Cost | Depreciation reserve | Net depreciated cost |
|---|---|---|---|
| Land | $99, 205. 30 | | |
| Less: Credit for gravel sales | 1, 049. 70 | | |
| | $98, 155. 60 | | |
| Land improvements | 1, 038. 10 | $1, 038. 10 | |
| Buildings | 92, 495. 20 | 48, 023. 49 | |
| | 191, 688. 90 | 49, 061. 59 | $142, 627. 31 |

In Schedule H of its Federal income tax return for 1953 the petitioner reported a contribution to Burroughs Foundation Auxiliary Trust of $700,000 on account of the arrangements it had entered into with McLucas and Hoffmaster with respect to Burroughs Farms. By reason of other items reported as contributions and the limitation

contained in section 23(q) of the 1939 Code, the petitioner actually deducted only $571,523.08 of the amount of $700,000 reported as a contribution made to Burroughs Foundation Auxiliary Trust. In determining the deficiency here involved the respondent determined that Burroughs Farms had not been given or contributed by petitioner to Burroughs Foundation Auxiliary Trust and, accordingly, disallowed the amount of $571,523.08 deducted by petitioner as a contribution.

In its income tax return for 1953 the petitioner deducted $1,188.04 as accrued rent due Burroughs Foundation Auxiliary Trust with respect to Burroughs Farms for the period December 23, 1953, to the end of the year 1953. The amount was not contributed to any charity by the Auxiliary Trust during 1953 nor was it paid to the trust by petitioner during that year. The respondent determined that such amount did not constitute an allowable deduction under the provisions of section 23(a)(1)(A) of the 1939 Code.

On February 18, 1955, McLucas caused to be filed with the respondent an application for exemption for Burroughs Foundation Auxiliary Trust. The application was prepared by petitioner's accountants in cooperation with petitioner's counsel. Although the application made reference to Burroughs Farms, no value was set forth therein for the property. In determining the deficiency involved herein the respondent held that Burroughs Foundation Auxiliary Trust is not exempt from Federal income tax under the provisions of section 101(6) of the 1939 Code.

OPINION.

The petitioner takes the position that by reason of the arrangement respecting Burroughs Farms which it entered into with McLucas and Hoffmaster as a result of its execution of the indenture of December 21, 1953, and the deed of like date it made a contribution on such date to Burroughs Foundation Auxiliary Trust of property having a then fair market value of at least $576,417, that, consequently, for 1953 it is entitled under section 23(q) of the 1939 Code to a deduction of such amount as a contribution, and that we should so hold. The respondent contends that by reason of the unqualified powers expressly retained by petitioner under the indenture of December 21, 1953, the petitioner did not make an absolute, unqualified, and irrevocable contribution or gift of Burroughs Farms to Burroughs Foundation Auxiliary Trust so as to be entitled to a deduction therefor as a contribution under section 23(q) of the Code.

Pertinent provisions of the Internal Revenue Code of 1939 are set out below [1] as are pertinent provisions of Regulations 118 relating to those provisions of the Code.[2] Where a contribution or gift is not made of money but of property, the basis for calculation of the amount of such contribution or gift is, as provided in the quoted portions of Regulations 118, the fair market value of the property at the time the contribution or gift is made.

The first question for determination here is what property, if any, the petitioner actually contributed or gave to Burroughs Foundation Auxiliary Trust when, on December 21, 1953, it executed the indenture of that date which created the Auxiliary Trust and executed to McLucas and Hoffmaster a deed to Burroughs Farms. Since instead of employing an independent instrument to create the Auxiliary Trust the petitioner in the indenture of December 21, 1953, incorporated therein certain portions of the indenture of December 20, 1951, made changes in other portions, and included in the indenture of December 21, 1953, matters not embraced in the inden-

---

[1] SEC. 23.   DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(q) CHARITABLE AND OTHER CONTRIBUTIONS BY CORPORATIONS.—In the case of a corporation, contributions or gifts payment of which is made within the taxable year to or for the use of:

\*          \*          \*          \*          \*          \*          \*

(2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States, or of any State or Territory, or of the District of Columbia, or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, veteran rehabilitation service, literary, or educational purposes or for the prevention of cruelty to children (but in the case of contributions or gifts to a trust, chest, fund, or foundation, payment of which is made within a taxable year beginning after December 31, 1948, only if such contributions or gifts are to be used within the United States or any of its possessions exclusively for such purposes), no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. \* \* \*

\*          \*          \*          \*          \*          \*          ⋆

to an amount which does not exceed 5 per centum of the taxpayer's net income as computed without the benefits of this subsection. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary.

[2] SEC. 39.23(q)–1 *Contributions or gifts by corporations.* (a) A corporation may, subject to the limitations provided by section 23(q), deduct from its gross income contributions or gifts to organizations described in section 23(q). Except as otherwise provided in paragraph (c) of this section, such deduction shall, to the extent provided by section 23(q), be allowed only for the taxable year in which such contributions or gifts are actually paid, regardless of when pledged and regardless of the method of accounting employed by the corporation in keeping its books and records. \* \* \*

(b) The provisions of § 39.23(o)–1, relating to \* \* \* (3) the basis for calculation of the amount of a contribution or gift which is other than money, are equally applicable to claims for deductions of contributions or gifts by corporations under section 23(q).

SEC. 39.23(o)–1 *Contributions or gifts by individuals.* \* \* \*

\*          \*          \*          \*          \*          \*          \*

(g) If the contribution or gift is other than money, the basis for calculation of the amount thereof shall be the fair market value of the property at the time of the contribution or gift.

ture of December 20, 1951, it is necessary to consider both indentures.

Under the indenture of December 20, 1951, which created the Burroughs Foundation, the affairs of the trust therein created are administered by the trustee and the committee provided for therein, the Burroughs Corporation Committee. Section 3 of the indenture provided that the trustee should pay the entire net income from the trust estate and any part or all of the principal thereof pursuant to the direction of the committee but only for religious, charitable, scientific, governmental, literary, or educational purposes. By section 6 the petitioner surrendered and released to the trustee every right, privilege, or option to make purchases from, or otherwise deal with the trust estate, or to acquire or reacquire trust property. Section 7 provided that the trustee shall hold, manage, lease, care for and protect the trust estate and collect the income therefrom. The trustee was authorized to invest and reinvest the trust estate, to sell at public or private sale any and all of the trust property for such price and upon such terms as it should see fit. Further the trustee was authorized to settle, contest, prosecute, or abandon claims in favor of or against the trust estate as it might deem advisable.

Respecting the Burroughs Corporation Committee, section 2 of the indenture of December 20, 1951, provided for the appointment of the committee consisting of four adult members who shall be officers, directors and/or employees of petitioner appointed by the board of directors of the petitioner. The section also provided that any committee member may resign at any time and that any committee member may be removed from office by the board of directors of the petitioner. The section further provided that any decision or action by the committee shall be binding on all persons and not subject to review by any court. Section 4 provided that the committee shall from time to time determine the beneficiary or the beneficiaries of the trust estate, that the trustee shall make payment in such amount or amounts to such beneficiary or beneficiaries and in such manner and at such times as shall be directed by the committee in writing, and that the trustee shall not be bound to inquire into the proceedings of the committee but shall act solely on such written direction. Section 10 provided that the committee may remove any trustee under the indenture and appoint a successor trustee. Section 12 provided that the committee shall administer the trust so that only such contributions to beneficiaries shall be made therefrom as would be recognized at the time contributions are made as proper deductions from income under the applicable provisions of the United States Internal Revenue Code. Section 13 provided that the committee by a unanimous vote may at any time declare

the trust to have served its purpose and so certify to the trustee, whereupon the trust shall terminate and the entire trust estate, less charges and expenses of the trustee, shall be paid over to such beneficiaries and in such amounts as are then determined and directed by the committee in the manner and under the conditions set forth in sections 3, 4, and 12 of the indenture.

Since the members of the Burroughs Corporation Committee are appointed by, are responsible to, and are removable by, the petitioner's board of directors and since the trustee is removable by the committee which also has authority to appoint a successor trustee, we think it is apparent from what has been said above that the petitioner acting through its board of directors, which by reason of its control over the committee, not only has the power to direct the operations of the Burroughs Foundation trust but also has the power to terminate the trust at any time it should decide to do so, and that such action would be binding on all persons and not subject to review by any court.

Because of the petitioner's unwillingness absolutely and irrevocably to divest itself of the ownership, control, and use of Burroughs Farms, the petitioner caused to be prepared and executed the indenture of December 21, 1953, which contained provisions significantly and materially different from those contained in the indenture of December 20, 1951.

By section 6 of the indenture of December 20, 1951, the petitioner surrendered and released to the trustee every right, privilege, or option to make purchases from or otherwise deal with the trust estate thereby created or to acquire or reacquire property of that trust, and by section 7 the trustee of that trust was authorized to sell at public or private sale any and all of the trust property for such price and upon such terms at it should see fit. By paragraph 4 of the indenture of December 21, 1953, the power of the trustees thereunder to sell Burroughs Farms or any part thereof is subject to the limitation that any such sale shall require the precedent approval of the Burroughs Corporation Committee which constitutes the committee for the Burroughs Foundation Auxiliary Trust. Furthermore paragraph 7 of the indenture of December 21, 1953, provides that the provisions of section 6 of the indenture of December 20, 1951, shall not preclude the trustees from entering into a lease or other contract relations with the petitioner respecting Burroughs Farms except that there shall be no sale or contract therefor of Burroughs Farms other than as provided in paragraph 8 of the indenture of December 21, 1953. Under paragraph 8 of the indenture of December 21, 1953, the petitioner, upon termination of the trust therein created, the Auxiliary Trust, "shall have the right to

buy back" Burroughs Farms "at and for a sum equal to that allowed by the Federal income tax authorities having jurisdiction in the premises as a deduction from income of the" petitioner "of the year in which said lands were conveyed by the" petitioner to the trustees.

As we view the situation, the petitioner, under the indenture of December 21, 1953, creating the Burroughs Foundation Auxiliary Trust, not only has the same broad power to direct the operations of that trust and to terminate it as it has under the indenture of December 20, 1951, with respect to the operations and termination of the Burroughs Foundation trust, but it has additional powers, namely, (1) the power to determine whether the trustees may or may not sell Burroughs Farms, and if the petitioner decides that the trustees may sell, the petitioner has the power to determine to whom the property may be sold as well as the price and all other terms and conditions of the sale, and (2) the power to terminate the Auxiliary Trust and reacquire Burroughs Farms. Because of the powers so retained by petitioner, we think the greatest interest the trustees acquired in Burroughs Farms was the bare legal title which they can hold only so long as the petitioner permits. It is argued that the Auxiliary Trust also acquired the right to an annual rental of $49,000, but we find no merit in such an argument. Due to the limited use (charitable contributions) which the trust might in any event make of the rental coupled with the fact that petitioner, through its committee, retained absolute control over the designation of the charities to which the contributions might be made, the amounts thereof, and the time when such contributions were to be made, it is apparent that the trust, whether charitable or not, acted as a mere conduit for contributions from petitioner and at no time could possess any greater incident of ownership in such rental.

As was said by the United States Supreme Court in *Smith* v. *Shaughnessy*, 318 U.S. 176,

The essence of a gift by trust is the abandonment of control over the property put in trust. The separable interests transferred are not gifts to the extent that power remains to revoke the trust or recapture the property represented by any of them, *Burnet* v. *Guggenheim, supra* [288 U.S. 280], or to modify the terms of the arrangement so as to make other disposition of the property, *Sanford* v. *Commissioner, supra* [308 U.S. 39]. * * *

In our opinion the powers and control which the petitioner retained with respect to Burroughs Farms under the indenture of December 21, 1953, aside from the petitioner's power to terminate the Auxiliary Trust and reacquire Burroughs Farms, are sufficient to preclude the petitioner's conveyance of the Farms to McLucas and Hoffmaster from constituting a contribution or gift of the prop-

erty as contemplated by section 23(q) of the 1939 Code. Consequently, regardless of the nature and character of the Auxiliary Trust and whether or not petitioner took proper corporate action leading to its creation, we hold that during 1953 the petitioner did not with respect to Burroughs Farms make a contribution or gift of any amount to Burroughs Foundation Auxiliary Trust.

It is true that the indenture of December 21, 1953, contains a recital respecting the "sum" at which the petitioner shall have the right to reacquire or "buy back" Burroughs Farms upon the termination of the Auxiliary Trust. However, when the terminology of the recital is considered in connection with the evidence with respect to the recital, it appears that the recital was intended to make the petitioner's liability for the payment of any sum contingent upon such sum having first been allowed by the Federal income tax authorities as a deduction from the income of the petitioner in a determination of petitioner's income tax liability. The evidence shows that the failure of the indenture of December 21, 1953, to recite a fixed or specified amount, having some relationship to the fair market value of Burroughs Farms, at which the petitioner could reacquire the property upon a termination of the Auxiliary Trust (cf. *Colorado National Bank of Denver*, 30 T.C. 933) was due to what the petitioner considered to be a business reason, namely, that if some amount had been recited and that amount should not be allowed as a deduction from the income of the petitioner, the petitioner nevertheless would be required to pay that amount to the trust upon reacquiring the property and that the petitioner did not desire to be so obligated. Since we have concluded above that, aside from the petitioner's retained power to reacquire Burroughs Farms, the other powers retained by the petitioner are such as to bar the allowance of a deduction in any amount to the petitioner as a contribution or gift on account of its conveyance of the Farms to McLucas and Hoffmaster, we think it follows that in view of the recital in question the petitioner upon termination of the Auxiliary Trust will be entitled to reacquire the Farms without the payment of any amount whatsoever.

Clearly petitioner fully intended to continue to operate the Farms at a substantial annual loss after conveying it to the trust as it had done prior to the conveyance. In fact it seems apparent that there was no real difference between its relationship to the Farms before or after the conveyance except the payment of an annual amount to the trust ostensibly as rental. We think it follows that the only real purpose underlying the transactions here involved was to make available to petitioner a large charitable gift deduction in 1953 and a continuing annual deduction of $49,000 which was actually a

further gift to charity which might be wholly or partially barred by statutory limitation, but deductible in full if successfully disguised as rental.

Because of factual differences the holdings in *Priscilla M. Sullivan*, 16 T.C. 228, *Mattie Fair*, 27 T.C. 866, and *Colorado National Bank of Denver*, *supra*, cases relied on by petitioner, are inapplicable here.

In its income tax return the petitioner deducted $1,188.04 as accrued rent due the Auxiliary Trust with respect to Burroughs Farms from December 23, 1953, the date of the lease between McLucas and Hoffmaster and the petitioner, to the end of 1953. The respondent determined that the foregoing amount was not an allowable deduction under the provisions of section 23(a)(1)(A) of the Code, pertinent portions of which are set out below.[3]

Under the provisions of section 23(a)(1)(A) for an amount to be deductible as rental the payment of the amount must be required as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which the taxpayer has no equity. We have held above that the powers and control which the petitioner retained with respect to Burroughs Farms under the indenture of December 21, 1953, are sufficient to preclude the petitioner's conveyance of Burroughs Farms to McLucas and Hoffmaster from constituting a contribution or gift of the property as contemplated by section 23(q) of the 1939 Code. In our view the petitioner's retention of such powers and control also precludes the holding that Burroughs Farms constituted property "to which the taxpayer [petitioner] has not taken or is not taking title or in which he [petitioner] has no equity." Accordingly, we sustain the respondent's disallowance of the deduction of $1,188.04 taken by petitioner as accrued rent.

The remaining issue is whether Burroughs Foundation Auxiliary Trust is exempt from Federal income tax under the provisions of section 101(6) of the 1939 Code. Since we have held above that during 1953 the petitioner did not with respect to Burroughs Farms make a contribution or gift of any amount to the Auxiliary Trust, it becomes unnecessary to determine whether that trust is exempt from tax under the provisions of section 101(6) of the Code.

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *

Since certain adjustments in the respondent's determinations as to other issues are required as a result of the stipulation of the parties,

*Decision will be entered under Rule 50.*