The **JOHN DANZ CHARITABLE TRUST**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 13608.

United States Court of Appeals Ninth Circuit.

Oct. 25, 1955.

Rehearing Denied May 14, 1956.

Pope, Circuit Judge, dissented.

F. A. LeSourd, Little, LeSourd, Palmer & Scott, Seattle, Wash., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Melva M. Graney, Carolyn Just, Ellis N. Slack, Sp. Assts. to Atty. Gen., John Potts Barnes, Chief Counsel, Internal Revenue Service, Chicago, Ill., for respondent.

Before POPE and FEE, Circuit Judges, and CLARK, District Judge.

JAMES ALGER FEE, Circuit Judge.

The instant petition was filed to review a decision of the Tax Court, 18 T.C. 454, which ordered and decided that there were deficiencies in the income tax of petitioner for three years: 1943, 1944 and 1945. There are three questions presented:

"1. Whether the trust, which was authorized to and did conduct businesses for profit, was 'organized and operated exclusively for * * * charitable * * * purposes', and is thus exempt from tax under Section 101(6) of the Internal Revenue Code, simply because the trust fund is payable only to such exempt organizations as John Danz, one of

the grantors, shall designate from time to time during his lifetime and, upon his death, by his will.

"2. Whether the trust net income of the taxable years not actually paid to charitable organizations during the taxable years was, pursuant to the trust instrument, 'permanently set aside' for charitable purposes during the taxable years, and is thus deductible under Section 162 (a) of the Code, even though the income was subject to use by the trustees for speculative investments and for the purchase and operation of trades and businesses, and charitable organizations could receive only such trust funds as John Danz designated during his lifetime (for which deduction has been allowed) and which remained at his death.

"3. Whether the filing by taxpayer of Form 990 returns required of exempt organizations under Section 54(f) of the Code started the running of the three-year limitation period prescribed by Section 275(a) for assessment of taxes so as to bar collection of the income tax deficiencies for 1943, 1944 and 1945."

John Danz and Jessie Danz were grantors in a written trust agreement whereby there were conveyed to Trustees 6,228 shares of stock in a theatre corporation, of which 900 shares were allocated to The John Danz Charitable Trust and the balance to six other private trusts. The powers of the Trustees as to all these trusts were broadly defined in the same instrument. They were permitted to "invest funds of the trust estates in any property * * * and whether or not speculative in character. They may carry on any trade or business on behalf of the trust estates. * * * They may loan funds of the trust estates with or without security. * * * In investing or speculating with trust funds, trustees may combine funds of any trusts created by grantors, whether created by this or any other instrument."

The Trustees were not intended, as the above provisions show, to act as a religious, educational or charitable institution. But, apparently, the profits of operations were to be turned over to The John Danz Charitable Trust, "Trust A", and to the six private trusts pro rata according as the funds of each were used in the particular business or speculation. Trust A, the funds of which were to be used in such business or speculation, was not a religious, educational or charitable institution. There were, however, clauses which required that, as beneficiaries, there were to be designated by John Danz or his successors in power of appointment, only a corporation or organization "of a type which is within the exemption from Federal Income Tax now granted by Paragraph 101 of the Internal Revenue Code," as it then stood or was thereafter restricted, and also of the type there specified in Sections 23(o), 812(d) and 1004(a) (2) of the Internal Revenue Code, 26 U.S.C.A. §§ 23(o), 812(d), 1004(a) (2), so that the contribution bequest or gift to such beneficiary would be deductible from income and exempt from estate and gift tax, then or in the future.

'During the years in question, additional contributions were made to Trust A in the sum of $109,542.00. Stocks were bought and sold or held by the Trustees. Some real property was also bought and sold at a profit. Other pieces were held for rent. The Savoy Hotel was purchased in 1943 and operated at a handsome profit during the years in question. Three candy shops were purchased out of Trust A funds in 1943 and 1944 and operated at a great profit. Jessie Danz managed these stores without compensation in order to make a contribution to Trust A.

Trust A made no distributions in 1943. Thereafter, it made distributions to a number of organizations exempt from tax under § 101 and which met the other limitations above referred to. The total of the charitable contributions thus made was $65,637.54. Two-thirds of this

sum, approximately, were contributed in 1947. The corpus of Trust A materially increased during the taxable years.

The Tax Court held petitioner Trust A was not exempt under § 101(6) and that petitioner was taxable as a trust and not as an association. It was decided that petitioner was not entitled to a deduction under § 162(a) for income not distributed during the taxable year. Full credit was given for distributions to the defined charitable institutions in each of the taxable years. Finally, it was held that the Statute of Limitations had not run against the collections of the deficiencies assessed.

■ So far as the claim of exemption under § 101(6) of the Code is concerned, the case is ruled by our opinion in Ralph H. Eaton Foundation v. Commissioner of Internal Revenue, 9 Cir., 219 F.2d 527, at pages 528–529:

"The articles state that the purpose of the corporation is to foster and promote religious, charitable and educational enterprises, and that it does not contemplate pecuniary gain or profit to the members thereof. Clearly, however, the corporation itself was not intended to operate and did not operate as a religious, educational or charitable institution. What was purposed was only that the profits from its various business activities would be turned over to such institutions. In a word, petitioner is a 'feeder' corporation whose principal activities have not the remotest connection with any religious, charitable or educational enterprise."

and again:

"The record shows that it engaged actively and exclusively in various commercial or business enterprises, namely farming, selling of real estate lots, the selling of sport clothes, and in a construction business. * * * All of the latter had to be and were engaged in activities which carried out the purposes and ideas

for which petitioner had been established. * * * But assuming the function of turning over the profits was an activity or operation it certainly was not the principal one. We agree with the Fourth Circuit [United States v. Community Services, 189 F.2d 421] that the word 'exclusively' as used in the statute must be given effect."

Subsidiary reliance is placed upon § 162 Net Income, 26 U.S.C.A. § 162, which reads:

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) * * * there shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (*o*)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(*o*), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit."

If the first portion of this section be applied, there is no exemption beyond that allowed. All payments by Trust A to strictly charitable corporations or concerns have been allowed. Any others were not paid or permanently set aside during the current year.

■ If exemption is sought under the second clause, the attempt is futile. Otherwise, no meaning is given to the word "exclusively." It is plain that these funds, when mingled with the funds of private trusts for business or speculative purposes and considering the risk of loss,

were not used exclusively for religious, charitable or other like purposes.[1] Trust A did not expressly dedicate any funds beyond those it disbursed to such purposes. The mere fact that the remaining funds, after partial or complete recapture from the channels of business or the marts of trade, whenever in a future more or less removed, in the discretion of the Trustees, they chose to pay these over, would necessarily be paid to institutions defined as charitable, does not satisfy the statute. There is another circumstance which compels consideration. John Danz, as settlor, was under no compulsion to exercise his power to designate charitable beneficiaries. If he failed to do so, the funds might during his life have been devoted "exclusively" to business ventures and commercial pursuits.

The "ultimate destination"[2] test is applicable in strictness to other phrases of the statute. It is not repudiated under circumstances which call for its application. But here an attempt to force the facts to fit the doctrine does violence to the language of the statute. The previous clause of the statutory definition requires that the money shall have been "paid or permanently set aside" in order to be exempt. Payment is a positive act. Payment could not be made until there was a designated beneficiary. The context then would seem to require that, to be "permanently set aside", a beneficiary should be pointed out with precision. The section also requires that the payment or permanent setting aside be done "during the taxable year" "for the purposes and in the manner specified in section 23(o)." It is perfectly clear that

the deduction could not be allowed under this language.

The intention of Congress is outlined with clarity by this previous section. The word "exclusively" in the next clause must mean that, although the beneficiaries are not yet designated, the funds are to be disbursed "within the taxable year." It is difficult to see how a fund is to be "exclusively" devoted to charitable purposes in any event if a part of it is to be used year after year for speculative and business ventures in conjunction with funds which redound to the profit of private individuals. Money is not "used" for charitable purposes when thus traded with. When any portion of this fund is so used, it would be a contradiction in terms to say it was devoted "exclusively" to charitable purposes.

The word "exclusively" modifies "purposes" in this clause. It has no relation to the character of the beneficiaries which is dealt with in the preceding clause. As to such beneficiaries, the deduction must be based upon the fact that the payment or permanent setting aside has been definitely accomplished to a named beneficiary. But here, "exclusively" means that the fund cannot be devoted to any other purpose, but the portion claimed as exempt must be "paid or permanently set aside" during the "taxable year" to a particular charity.

If John or Jessie Danz wished to give money to charitable organizations, they should have done so directly without mingling it with speculative or business funds. When the Trustees of Trust A so used the money of that trust, these were by no stretch of the imagination devoted

---

1. The Arthur Jordan case, Arthur Jordan Foundation v. C. I. R., 7 Cir., 210 F.2d 885, does not squarely decide the point which is here before us. There the trust was to be all distributed to "charitable" organizations when the fund had reached $5,000,000.00. Here there is no mandatory duty upon the Trustees to devote the fund to any particular charity at a particular time.

2. As Judge Healy points out, this Court is not pledged to the use of the ultimate

destination test, under other sections of the statute where it might be applied. Ralph H. Eaton Foundation v. Commissioner of Internal Revenue, 9 Cir., 219 F. 2d 527. The reasoning of this opinion indicates distrust of exemptions of trusts or feeders of trusts which are actively engaged in commercial pursuits which have nothing to do with charity except that some fund so earned may eventually be permanently allocated thereto.

"exclusively to" religious, charitable, scientific, literary or educational purposes.

The Tax Court held that the deficiencies for the years 1943, 1944 and 1945, were assessed by the Commissioner within the three year period, as prescribed by § 275(a), from the filing of fiduciary tax returns on Form 1041. Petitioner contends that collection of such deficiencies is barred in that it claims the limitation period should have started when it filed Form 990 information returns required of exempt organizations under § 54(f) and Treasury Regulation 111, § 29.101–1. This contention has no merit. Petitioner is not such an exempt organization on any theory. The "returns" were insufficient in that these were voluntary for an organization such as petitioner and did not supply the requisite information to constitute a basis to start the running of the period of limitations under the applicable statute.

The decision of the Tax Court is affirmed.

POPE, Circuit Judge (dissenting).

I have a somewhat different view of the statutes here applicable,—one that has led me to believe that Arthur Jordan Foundation v. C. I. R., 7 Cir., 210 F.2d 885, which reaches the opposite conclusion, is correctly decided.

I do not think Ralph H. Eaton Foundation v. Commissioner of Internal Revenue, 9 Cir., 219 F.2d 527, furnishes any solution for this case. It was decided upon a claim for exemption under Sec. 101 (6) of the Revenue Code which refers to "corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *." The John Danz Charitable Trust does not come within any of those categories. It is, as the Tax Court pointed out in its opinion, "a genuine valid trust * * * taxable under Supplement E". The tax is imposed by Sec. 161 and the deduction claimed is that allowed by Sec. 162(a).

A difference in phraseology in Sec. 101 (6) and Sec. 162(a) suggests a different congressional intent with respect to corporations and foundations on the one hand and trusts on the other. Sec. 101 (6) which commanded the decision in the Eaton Foundation case refers to corporations or foundations *"organized and operated* exclusively for religious, charitable", etc. purposes. The words which I have italicized appear to me to be key words. Because Eaton Foundation was not operated exclusively for charitable purposes, it was not entitled to the exemption claimed.

As pointed out in the majority opinion, Sec. 162(a) contains two clauses. The first clause:

"There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o),"

the second clause:

"Or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. * * * "

It seems to me that the first clause is intended to cover the case of a trust which provides for distribution of income both to charitable and non-charitable purposes. Thus if the creator of the trust provides for distribution of income (a) to his grandson, and (b) to the community chest, the deduction relates to that part of the gross income which during the taxable year is paid or permanently set aside for the community chest. However, if the trust instrument makes no provision whatever for the grandson or any other individual and the sole ben-

eficiary under the trust is the community chest, then the second clause applies since the income "is to be used exclusively for * * * charitable * * * purposes." Thus there is no necessity for any allocation within the taxable year of the income as between an ordinary individual on the one hand and a charity on the other. The second clause begins with the words: "Or *is to be* used exclusively" etc. These are words which themselves point to *future* use.[1] The construction which I here suggest would lead to the same result reached in Arthur Jordan Foundation v. C. I. R., supra.

It is true that here the Trust purchased and operated for a limited time three small candy shops adjoining the theatres which were owned by a theatre company in which the trust held shares of stock. The findings also show that the trustees purchased the hotel property for the purpose of liquidating the personal property and holding the real property for lease to a hotel operator. It is entirely normal for a trust to acquire and own real property and collect the rents and revenues from leases thereof, and the operation of the hotel during the taxable year here involved, while a suitable arrangement for lease was being sought, was no more than incidental to the proper acquisition of real estate for rental purposes.

In Arthur Jordan Foundation, supra, the court said, 210 F.2d at page 889: "But if the ultimate beneficial application of the income is for approved purposes, the bequests so held for investment are, within the meaning of the statute, being used for those purposes. Accordingly, such bequests are deductible.

"The principle which to us seems controlling in this case is the reasonable certainty that the beneficent purposes of the trust will be greatly served as the investment fund expands and reaches the goal fixed by the settlor. It may be expected that as the fund increases the income available for direct application to charitable or related purposes will in-

crease accordingly. There can be no other reason, under the terms of the trust instrument, for adding to the fund. On the other hand, anything which retards the growth of the fund necessarily reduces the amount of the income available for direct charitable purposes. The purpose of investment is solely and exclusively to produce more income for those purposes. To subject to tax that part of the income which is retained as a part of the corpus would thus very materially impair the possibility of achieving those objectives."

I am impressed by that language and what was said about the policy of Congress to encourage gifts for charitable purposes. As I have indicated above, I think that the word "exclusively" is inserted in this section for the purpose of making the distinction between trusts which may be set up for dual purposes and trusts which are set up exclusively for charitable purposes. That some of the funds here were invested in candy stores is not sufficient to demonstrate that the income of the trust, whatever it is, is not to be used exclusively for charitable purposes. Even a trust which purchases stocks and bonds might suffer loss in its investments but that would not suggest that the income received by such a trust was for that reason not to be used exclusively for charitable purposes.

I am satisfied that the interpretation the majority give to the word "exclusively" is untenable. They say this "must mean that, although the beneficiaries are not yet designated, the funds are to be disbursed 'within the taxable year'." Disbursement within a taxable year would necessarily be to *named* beneficiaries. The effect of the majority's interpretation is to wipe out this second clause entirely.

It is suggested that the Arthur Jordan Foundation was different in that there the distribution to charitable organizations was to be made when the fund had reached $5,000,000. Says the opinion:

1. There is no comparable language, looking to the future, in § 101(6) which was involved in the Eaton Foundation case.

"John Danz, as settlor, was under no compulsion to exercise his power to designate charitable beneficiaries." This is unimportant for the trust instrument provides that upon the death of John Danz the amounts remaining in trust A "shall then be distributed" to beneficiaries which must meet the designated requirements. Nothing could be more certain than the death of John Danz.

I am of the opinion that the decision of the Tax Court should be reversed.