JAMES L. DARLING AND MARION C. DARLING, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 94949. Filed January 29, 1965.

*Jules S. Korner III*, for petitioners.

*Merrill R. Talpers*, for respondent.

Hoyt, *Judge:* Respondent determined income tax deficiencies against petitioners for the calendar years and in the amounts of $533.18 for 1957, $858.67 for 1958, and $1,672.95 for 1959. Petitioners allege that such amounts, together with any overpayments which may be found in this proceeding, are in issue.

Several issues have been disposed of by stipulations of the parties, both written and oral at the trial, and by concession on briefs, which will be given effect in the recomputation under Rule 50.

There remains for decision herein one broad issue applicable to all 3 taxable years involved, namely, whether petitioners are entitled to claimed charitable deductions because of conveyances in trust of remainder interests in real property, with improvements thereon, for the benefit of Westminster College, together with the correct method of computing the amounts of such deductions. Certain subsidiary questions can best be set forth in the opinion in relation to the contentions of the parties.

### FINDINGS OF FACT

Most of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners are husband and wife. They resided in Denver, Colo., during the years here in issue, and their joint income tax returns for the years 1957, 1958, and 1959 were duly filed with the district director of internal revenue at Denver, Colo. Each of the petitioners filed Federal gift tax returns for the years 1957, 1958, and 1959. Petitioner James L. Darling was born on September 8, 1899, and petitioner Marion C. Darling, his wife, was born on August 16, 1907.

On December 30, 1957, petitioners executed a trust agreement creating a private trust of which Harold D. Torgan, petitioners' lawyer, was named trustee for the sole use and benefit of Westminster College of Fulton, Mo. On April 27, 1959, the trust agreement was amended as hereinafter mentioned. It is stipulated by the parties that the private trust created by the trust agreement and its amendment is not exempt from Federal income tax but that the said Westminster College, the beneficiary thereof, is an educational institution exempt from Federal income taxes under the provisions of section 501(c)(3) of the Internal Revenue Code of 1954 and gifts thereto may be deducted for income tax purposes under section 170 of the 1954 Code.

The trust agreement of December 30, 1957, provided in part as follows:

1. The Trustee shall receive such conveyances of real property, or an interest therein, as are made to said Trustee by donors, and Trustee shall hold title to such property for the sole use and benefit of Westminster College of Fulton, Missouri.

2. Any and all conveyances of real property, or any interest therein, by donors to Trustee, shall automatically reserve to donors during their lifetime (including the lifetime of the survivor of them) the following rights and privileges:

To retain the occupation, possession and control; to receive and retain the rents, issues and profits; at any time before the entire interest in any one parcel of real property, subject to said life estate, has been conveyed by Grantors to Trustee to determine in their sole discretion (or the discretion of the survivor of them) whether said property should be sold and the terms of sale; if said property should be sold, to receive the total net income from the monies so received from the sale price. Upon the deaths of both Grantors, full fee simple title shall become vested in Grantee.

All such rights shall be reserved in said deeds without the necessity for setting them forth verbatim in said deeds and such rights shall run with the land unless specifically released by deed from the donors.

3. This trust shall be *irrevocable*, and no part of the assets delivered to the Trustee shall ever be returned to donors.

4. The Trustee shall have the following powers:

(a) To convey said real property to Westminster College in accordance with the terms hereof.

(b) To sell, with consent of donors, and convey real property received by the Trustee, and upon such sale the Trustee shall immediately transmit the net proceeds of the sale of that interest in the property held in the name of trustee, to Westminster College of Fulton, Missouri, under conditions as hereinafter set forth.

(c) Upon the sale by the Trustee of real property in the name of Trustee, the Trustee shall, prior to the transmittal of the proceeds of sale to Westminster College, enter into written agreement with said college on behalf of donors under which donors, or the survivor of them, shall receive a lifetime income from the funds so contributed to said College, based on the average return from all similarly invested contributions. Said contribution or gift of funds shall be irrevocable, and said funds may be comingled with contributions by others to said College. Said written agreement shall be in a form approved by donors.

\*     \*     \*     \*     \*     \*     \*

(e) Upon the deaths of both said donors, or upon conveyance to Trustee of the entire interest in any one parcel of real property, or upon written direction by donors, or the survivor (whichever shall first occur), the Trustee shall immediately convey to Westminster College all real property held as Trustee under this trust, in accordance with the terms of this trust.

(f) This Trust Fund shall be used exclusively for educational purposes within the United States, and no part of the Trust Fund shall inure to the benefit of any private shareholder or individual, and no substantial part of the activities of the trust shall consist of the carrying on of propaganda, or otherwise attempting to influence legislation; it being the intention that at all times the Trust Fund shall be tax exempt, and the donations to the Trust Fund shall be deductible from taxable income to the extent allowed by the provisions of the Internal Revenue Code and other applicable legislation and regulations.

\*     \*     \*     \*     \*     \*     \*

6. The Trustee shall render from time to time accounts of its transactions to the donors and the donors may approve such accounts by an instrument in writing delivered to the Trustee. In the absence of the filing in writing with the Trustee by the donors of exceptions or objections to any such account within sixty (60) days, the donors shall be deemed to have approved such account; and in such case or upon the written approval of the donors of any such account, the Trustee shall be released, relieved and discharged with respect to all matters and things set forth in such account as though such account had been settled by the Decree of a court of competent jurisdiction. No person other than the donors may require an accounting or bring any action against the Trustee with respect to the said trust and/or its actions as Trustee.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

7. Any Trustee acting hereunder may resign at any time by giving written notice to the donors, and the donors may remove any Trustee at any time. In the case of the resignation or removal of any Trustee the donors shall appoint a successor Trustee, &ast; &ast; &ast;

8. This Agreement may be amended or modified at any time by the donors, provided that no amendment or modification shall be made which will result in preventing the Trust Fund from being tax exempt and the donations to the Trust Fund from being deductible from the taxable income of the donors, to the extent allowed by the provisions of the Internal Revenue Code and other applicable legislation and regulations, and further provided that no amendment or modification shall increase the duties or obligations or change the compensation of the Trustee without its consent. Any such amendment or modification shall be by a written instrument which shall be delivered to the Trustee.

The April 27, 1959, amendment to the trust agreement provided, in part, as follows:

*Paragraph 4 (b)* shall be amended to read as follows:

(b i) To sell, with consent of donors, and convey real property received by the Trustee, and upon such sale the Trustee may, at the discretion of donors, or the survivor of them, transmit the net proceeds of the sale of that interest in the property held in the name of the Trustee, to Westminster College of Fulton, Missouri, or the Trustee may, at the discretion of donors, reinvest said proceeds in other real property whether owned by donors or otherwise, or may deposit such funds in a bank or other institution, or invest the same in accordance with Colorado Statutes pertaining to investments of fiduciaries for the use and benefit of said College.

(b ii) The Trustee shall also have the right, with consent of donors, to exchange real property, an interest in which may have been conveyed to said College, for other real property, and whenever such exchange takes place, or whenever property is sold in which said College holds an interest and the College's share of the proceeds is reinvested in other property, the Trustee shall hold an interest in said new or exchanged property as Trustee for the benefit of said College in an amount or value at least equal to the said interest of the College which was exchanged, sold, or surrendered, so that the interest of the College shall not be diminished, but shall be protected at all times.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

*Paragraph 4 (e)* shall be amended to read as follows:

(e) Upon the deaths of both said donors, or upon written direction by donors, or the survivor (whichever shall first occur), the Trustee shall immediately convey to Westminster College all real and personal property and all other assets held as Trustee under this trust, in accordance with the terms of this trust.

The trust agreement did not provide for any reserve for depreciation or other diminution in value of the trust corpus in improved real property occurring thereon during the possession and use thereof throughout the lives of the donors and the survivors.

On December 30, 1957, the petitioners deeded to Torgan, as trustee, an undivided 16⅔-percent remainder interest, after their two lives, in and to certain real property located at 845 Pennsylvania Street, Denver, Colo., subject to all the terms and conditions of the above-mentioned trust agreement. This property was conveyed to the trust subject to a mortgage which had an unpaid balance at the date of conveyance of $9,375. The fair market value of the whole property at December 30, 1957, was $33,750. At the time of such conveyance and during petitioners' ownership of an interest therein, the property was used by petitioners as a personal residence. It consisted of a 3-story, 16-room stone house on three 25-foot-wide lots. The house was built in the year 1891 and was torn down during the fall of 1959, after an exchange thereof for other real property as hereinafter mentioned.

On December 29, 1958, petitioners deeded to Torgan, as trustee, an undivided 45-percent remainder interest, after their two lives, in and to certain real property located at 2324–2328 South Columbine Street, Denver, Colo., subject to all the terms and conditions of the above-mentioned trust agreement. This property was conveyed subject to a mortgage having an unpaid balance of $10,750 at the date of conveyance and it had a fair market value of $19,500 at that time. The property consisted of a two-story brick duplex house, built in the year 1919, with each side containing one-family living quarters of three bedrooms and other rooms. Petitioners had purchased the property in April 1954 at a price of $13,950 as rental property and it was rented during the years in issue herein. Petitioners have used a depreciable life of 20 years from the date of their acquisition in 1954 with no allowance for salvage value on such property for Federal income tax purposes and with respect thereto they claimed depreciation deductions on their tax returns for the years 1957, 1958, and 1959.

On April 29, 1959, petitioners deeded to Torgan, as trustee, a further undivided 33⅓-percent remainder interest, after their two lives, in and to the property at 845 Pennsylvania Street, as to which petitioners had given a 16⅔-percent undivided remainder interest in 1957, and such conveyance was likewise made subject to all the terms and conditions of the above-mentioned trust agreement. This 1959 conveyance, like the prior one, was made subject to the mortgage on the property which had a then unpaid balance in the stipulated amount of $8,426.56. At that time the fair market value of 845 Pennsylvania Street was $39,426.56.

By deeds dated April 30, 1959, and acknowledged May 1, 1959, the petitioners and Harold D. Torgan, as trustee, conveyed a fee simple interest in the property located at 845 Pennsylvania Street to Saul N. Davidson and Alvin L. Cohen, who assumed the mortgage thereon, in exchange for property located at 95 Corona Street, Denver, Colo., which was not then encumbered by any mortgage and which was conveyed by deed dated and acknowledged May 1, 1959, to petitioners. This deed, from Davidson and Cohen, conveyed no interest in the Corona Street property to Torgan as trustee. The Corona Street property had a fair market value of $31,000 at this time.[1] After such acquisition petitioners borrowed $18,000 secured by a first mortgage on the 95 Corona Street property. This property consisted of a nine-room brick bungalow, including two baths and six bedrooms built in 1919. It was used by petitioners as a personal residence.

On May 6, 1959, petitioners purchased a property located near Wadsworth Boulevard in Jefferson County, Colo., for $31,900, unencumbered by any mortgage at that time, and shortly thereafter they borrowed $15,000 secured by a first mortgage thereon. This property consisted of a gas filling station built in 1956 on an 80- by 108-foot lot. It was leased to an oil company for a term of 10 years commencing January 1956, which lease included an option to renew. Petitioners have used a 17-year depreciable life commencing May 1959 for the improvement on this property with no allowance for salvage value for Federal income tax purposes. In their return for 1959 petitioners claimed a depreciation deduction on this improved property commencing with their date of ownership in May 1959.

On May 25, 1959, petitioners made two conveyances to Harold D. Torgan, as trustee, of certain remainder interests subject to all the terms and conditions of the trust agreement dated December 30, 1957, and its amendment dated April 27, 1959. One such conveyance was an undivided 87½-percent remainder interest after their two lives in and to the property located at 95 Corona Street which they had acquired in exchange for the Pennsylvania Street house on May 1, 1959, subject to the $18,000 mortgage thereon. As stated above, said property had a fair market value of $31,000 at that time. The other such conveyance was an undivided 33⅓-percent remainder interest, after their two lives, in and to the gas filling station property near Wadsworth Boulevard subject to the $15,000 mortgage thereon. Said property had a fair market value of $31,900 at that time.

---

[1] In connection with said exchange a contract was entered into on May 1, 1959, whereby petitioners or survivor of them or the above-mentioned trustee, were given an option to demand that Davidson and Cohen repurchase the 95 Corona St. property at any time prior to May 1, 1964, for the price of $31,000 and assume any mortgage placed on the property by petitioners. Subsequent to the taxable years involved herein and pursuant to such contract the 95 Corona St. property was repurchased by Davidson and Cohen in September 1962.

Petitioners filed separate Federal gift tax returns for each of the years 1957, 1958, and 1959 in which they each reported one-half of the computed value of certain gifts of remainder interests in real property. As set forth in such returns the amounts of the respective gifts were arrived at by use of the same general formula for each year, namely, by taking petitioners' ascribed fair market value of the whole property at the date of the gift; subtracting therefrom the amount of any outstanding mortgage indebtedness against the property on such date; applying to the equity value thus produced, a present worth decimal to arrive at the present value of the remainder after the life of the survivor of two persons of the then age of each petitioner; and applying to the result thus obtained the percentage of remainder interest conveyed in trust. The decimal factor which was applied by petitioners for the respective years was 0.42037 for 1957 for two persons ages 58 and 50, 0.43246 for 1958 for two persons ages 59 and 51, and 0.44474 for 1959 for two persons ages 60 and 52. Such factors are the same as those set forth in table III found in Internal Revenue Service Publication No. 11, entitled "Actuarial Values for Estates and Gift Tax." Said table III shows the present worth of $1 due at the death of the survivor of two persons computed upon the basis of the mortality table appearing as United States Life Table 38 of United States Life Tables and Actuarial Tables 1939–1941, published by the Department of Commerce, Bureau of Census, and interest at the rate of 3½ percent a year, compounded annually.

Based upon the above-mentioned United States Life Table 38, the computed average future lifetime of the survivor of a couple at ages 58 and 50 is 26.43 years; of a couple at ages 59 and 51 is 25.57 years; and of a couple at ages 60 and 52 is 24.72 years. Those periods being averages, some survivors will live a shorter period and some longer. Based upon the same table 38 there is a possibility that the survivor of a couple of those respective ages will live longer than the indicated averages, namely, a 10.3-percent possibility of a 37-year life, a 10.4-percent possibility of a 36-year life, and a 10.5-percent possibility of a 35-year life.

With respect to the conveyance of an undivided 16⅔-percent remainder interest in the property located at 845 Pennsylvania Street on December 30, 1957, petitioners' gift tax returns for that year reported combined gifts in the amount of $2,364.58. In the computation thereof, petitioners reported a fair market value of the whole property in the amount of $43,125 on the date of the conveyance, whereas the parties have now stipulated herein a fair market value of $33,750 on that date. The parties are agreed that the property was subject to a

mortgage of $9,375 as shown on the gift tax return. As hereinafter mentioned petitioners' joint income tax return for 1957 claimed a charitable deduction in the amount of $2,364.58 on account of that gift.

With respect to the conveyance of an undivided 45-percent remainder interest in the property located at 2324–2328 South Columbine Street on December 29, 1958, petitioners' gift tax returns for that year reported combined gifts in the amount of $3,784.03. In the computation thereof, petitioners reported that the whole property had a fair market value of $19,500 and was subject to a mortgage of $10,750 on that date, and the parties have stipulated herein that both of those amounts are correct. However, in the computations in their gift tax returns, petitioners failed to take the step in their formula of arriving at 45 percent of the value of the entire remainder interest, and instead used 100 percent thereof as the value of the combined gifts in abovementioned amount of $3,784.03. As hereinafter mentioned petitioners' joint income tax return for 1958 claimed a charitable deduction in the amount of $3,784 on account of that gift.

With respect to the conveyance in trust of an additional 33⅓-percent remainder interest in the 845 Pennsylvania Street property on April 29, 1959, one schedule attached to petitioners' gift tax returns for that year reported combined gifts in the amount of $5,003.33, $2,501.66 as a gift from each petitioner to the trust. In the computation thereof petitioners reported that the whole property had a fair market value of $42,250 and was subject to a mortgage of $8,500, whereas the parties have now stipulated herein that the property had a fair market value of $39,426.56 and was subject to a mortgage balance of $8,426.56 at the time of that conveyance.

With respect to the conveyance in trust of an undivided 87½-percent remainder interest in the 95 Corona Street property on May 25, 1959, one schedule attached to petitioners' gift tax returns for that year reported combined gifts in the amount of $5,058.92. In the computation thereof petitioners reported that the whole property had a fair market value of $31,000 and was subject to a mortgage of $18,000 at the time of the conveyance, and the parties have stipulated herein that both of those amounts are correct. The petitioners' gift tax returns for 1959 do not report petitioners' conveyance in trust on May 25, 1959, of an undivided 33⅓-percent remainder interest in the gas filling station property near Wadsworth Boulevard which had a stipulated fair market value of $31,900, and a mortgage of $15,000 thereon at the time of such conveyance.

In their joint Federal income tax returns for the years 1957, 1958, and 1959, petitioners claimed charitable deductions for gifts to Harold

D. Torgan, trustee, for the benefit of Westminster College. Their income tax return for the year 1957 claimed a charitable deduction in the amount of $2,364.58 as a remainder interest gift in trust for Westminster College. Their income tax return for 1958 claimed a charitable deduction in the amount of $3,784 as a remainder interest in trust for Westminster College, and, further, petitioners claimed a charitable deduction of $100 as a contribution to the trustee for Westminster College. Their income tax return for 1959 claimed a charitable deduction in the amount of $4,737.75 as a remainder interest in trust for Westminster College, and, further, petitioners claimed a charitable deduction of $13.79 as a contribution to the trustee for Westminster College.

In his statutory notice of deficiency the respondent disallowed the claimed charitable deductions for gifts in trust for the benefit of Westminster College in the amounts of $2,364.58 for 1957, $3,884 ($3,784+$100) for 1958, and $4,751.54 ($4,737.75+$13.79) for 1959. At the trial the parties orally stipulated that respondent correctly disallowed the separate gifts of $100 for 1958 and $13.79 for 1959, which related to payments made on mortgages and that those two items are no longer in dispute.

With respect to certain other adjustments made by respondent in his statutory notice of deficiency, the parties have stipulated that as a result of the hereinabove mentioned exchange of property located at 845 Pennsylvania Street for property at 95 Corona Street, petitioners realized a recognizable long-term capital gain in the year 1959 in the amount of $6,552.75 of which 50 percent thereof or $3,276.37 is includable in their taxable income for that year. It is further stipulated by the parties that petitioners' allowable sales tax deductions are $100 for each of the years 1957, 1958, and 1959, and that they are not entitled to any deduction claimed for a casualty on eyeglasses for 1959. Those various items are no longer in dispute.

OPINION

Pursuant to the stipulations and concessions of the parties, and irrespective of our decision on the remaining issue herein, various adjustments are required in the redetermination of petitioners' income tax liability for each of the taxable years 1957, 1958, and 1959, and appropriate effect thereto will be given in the recomputation under Rule 50.

The remaining broad issue presented herein is whether petitioners are entitled to deduct any amount in each taxable year as a charitable gift on account of their conveyances of undivided remainder interests

in improved real property in trust for the use and benefit of Westminster College.

Section 170 of the 1954 Code[2] provides in subsection (a)(1) for the allowance of a deduction of "any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year" if verified under regulations prescribed by the Secretary or his delegate. Further provision is made in section 170, subsection (b), for certain limitations with respect to such deduction and the amount thereof.

The parties are in agreement that during each of the taxable years involved, petitioners made conveyances of undivided fractional remainder interests in improved real property to a private trust for the benefit of Westminster College. The parties have stipulated that Westminster College is an educational institution exempt from Federal income tax under the provisions of section 501(c)(3) and that gifts thereto may be deducted for income tax purposes under section 170. Further, in the event it is determined herein that petitioners are entitled to the claimed charitable gift deductions, respondent concedes on brief that there is no longer any issue involved because the conveyances were made to a private trust for the use and benefit of Westminster College instead of directly to the latter and, accordingly, that petitioners are entitled to treat their gifts as made to an educational organization subject to the limitations of both subsections (b)(1)(A) and (b)(1)(B) of section 170 (that is, the 30-percent limitation) rather than the sole limitation of subsection (b)(1)(B) as originally contended by respondent. Also, on this latter point, see *Denver & Rio Grande Western Railroad Co.*, 38 T.C. 557, 583 (1962); *John Danz*, 18 T.C. 454, 464 (1952), affd. 231 F. 2d 673 (C.A. 9), certiorari denied 352 U.S. 828; and Rev. Rul. 57–562, 1957–2 C.B. 159.

Thus, the issue presented has been narrowed to the question of whether, under the facts disclosed by the record before us, petitioners are entitled to deduct the amounts claimed, as adjusted by our findings, for the various conveyances in trust of remainder interests in improved real property.

Section 170, *supra*, does not specify the basis for ascertaining the amount of a charitable gift or contribution when made in property other than money or by means of a remainder interest in property, but the implementing Income Tax Regulations do contain numerous provisions with respect thereto. The pertinent portions of Income Tax Regulations, sec. 1.170–1, and sec. 1.170–2, are set forth in

---

[2] All Code sections mentioned herein refer to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

the margin.[3]  Briefly stated, section 1.170–1 provides, under paragraph (a) that any contribution actually paid during the taxable year to a qualifying charity is allowable as a deduction; under paragraph (b) that ordinarily a contribution is made at the time delivery is effected; under paragraph (c)(1) that if a contribution is made in property other than money the amount of the deduction is determined by the fair market value of the property at the time effected; and under paragraph (d) that a deduction may be allowed for a contribution of an interest in the income from or the remainder of property, which interests shall be valued by reference to certain tables.  However, the allowance under (d) is qualified by paragraph (e) relating to transfers dependent upon the performance of some act or happening of a precedent event in order that they might become effective; no deduction

---

[3] Sec. 1.170–1  Charitable, etc., contributions and gifts; allowance of deduction.

(a) *General rule.*  Any charitable contribution (as defined in section 170(c)) actually paid during the taxable year is allowable as a deduction in computing taxable income, * * *

(b) *Time of making contribution.*  Ordinarily a contribution is made at the time delivery is effected.  * * *

(c) *Contribution in property*—

(1) *General rules.*  If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution.  * * *

(d) *Transfers of income and remainder interests.*  A deduction may be allowed for a contribution of an interest in the income from property or an interest in the remainder. The income or remainder interest shall be valued according to the tables referred to in paragraph (d) of § 1.170–2.  For rules with respect to certain transfers to a trust, see paragraph (d) of § 1.170–2.

(e) *Transfers subject to a condition or a power.*  If as of the date of a gift a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.  If an interest passes to or is vested in charity on the date of the gift and the interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable on the date of the gift, the deduction is allowable.  The deduction is not allowed in the case of a transfer in trust conveying a present interest in income if by reason of all the conditions and circumstances surrounding the transfer it appears that the charity may not receive the beneficial enjoyment of the interest.  For example, assume that assets placed in trust consist of stock in a corporation the fiscal policies of which are controlled by the donor and his family, that the trustees and remaindermen are likewise members of the donor's family, and that the governing instrument contains no adequate guarantee of the requisite income to the charitable organization.  Under such circumstances, no deduction will be allowed.  Similarly, if the trustees were not members of the donor's family but had no power to sell or otherwise dispose of closely held stock, or otherwise insure the requisite enjoyment of income to the charitable organization, no deduction would be allowed.

Sec. 1.170–2  Charitable deductions by individuals; limitations.

(d)(2) *Valuation of interests.*  The present value of the remainder interest in the property, taking into account the value of the life estates reserved to the taxpayer and his wife, may be allowed as a charitable deduction.  * * *  Where the value of a reversionary interest is dependent upon the continuation or termination of the life of one or more persons, it must be determined on the basis of Table 38 of United States Life Tables and Actuarial Tables 1939–1941, published by the United States Department of Commerce, Bureau of the Census, and interest at the rate of 3½ percent a year, compounded annually.  See paragraph (f), Table I, of § 20.2031–7 of this chapter (Estate Tax Regulations) for valuations based on one life, and "Actuarial Values for Estate and Gift Tax" (Internal Revenue Service Publication No. 11, Rev. 5–59) for values based on more than one life.  * * *

is allowed in the case of a condition precedent unless the possibility of charity not taking is so remote as to be negligible; in the case of a condition subsequent, unless the defeat of a vested interest is highly improbable, on the date of the gift, the deduction is allowable. Paragraph (e) provides that no deduction is allowed in the case of a transfer of a present interest in trust if by reason of all the conditions and circumstances surrounding the transfer it appears that the charity may not receive the benficial enjoyment of the interest. The tables mentioned above in paragraph (d) and referred to in Income Tax Regulations, section 1.170–2(d)(2), as related to an interest which is dependent upon the termination of the life of one or more persons, include table 38 of the United States Life Tables and Actuarial Tables 1939–1941 and interest at the rate of 3½ percent a year compounded annually and, also, Actuarial Values for Estate and Gift Tax (I.R.S. Pub. No. 11, Rev. 5–59) for values based on more than one life.

Petitioners contend that in the instant case the stipulated fair market value of the entire property, less the stipulated amount of the outstanding mortgage indebtedness thereon at the date of the conveyance in trust, constitutes the fair market value of their equity or interest in the property at the time of the gift, Income Tax Regs., sec. 1.170–1(c)(1), and that this rule applies whether or not the gift was an interest in improved real property subject to depreciation, citing Rev. Rul. 55–275, 1955–1 C.B. 295, and Rev. Rul. 55–410, 1955–1 C.B. 297, which hold that a gift of property which has either appreciated or depreciated in value as compared to its basis in the hands of the donor does not give rise to a taxable gain or deductible loss to the donor.

Petitioners further contend that regulations section 1.170–1(d), without any exception based on whether the property involved is depreciable or nondepreciable in character, clearly and specifically provides that a remainder interest in property shall be valued according to certain tables which, in turn, set forth the appropriate decimal factors to be applied to the fair market value of the property involved, for the purpose of calculating the present worth of a remainder interest therein. Thus, petitioners contend that the regulations specifically provide for the application in instant case of the decimal factors pertaining to their respective ages as set forth in table III of Actuarial Values for Estate and Gift Tax, showing the present worth of $1 due at the death of the survivor of two persons (interest at 3½ percent), and, further, that the application thereof to the stipulated fair market value of their interest in the property on the date of the conveyance in trust produces the end result, namely, the present worth of

the gift remainder interest, without further adjustment, and thus the amount of the allowable deduction.

Petitioners argue that respondent is bound by his own valid regulations, citing *Helvering* v. *R. J. Reynolds Tobacco Co.*, 306 U.S. 110 (1939), and *First Chrold Corporation* v. *Commissioner*, 306 U.S. 117 (1939), and that he may not be permitted to disregard or indirectly seek to amend them in this proceeding by denying the application of the said table III or insisting that consideration be given to the factor of depreciation of the improved property during the interim between the date of the gift and the time of beneficial possession and enjoyment by the charity remainderman.

Petitioners further argue that these are gifts of vested interests and do not present any question involving a condition precedent or subsequent so that decided cases on that question have no application herein and, further, that the terms of the trust instrument duly protect the value of the remainderman's interest in the event of a sale or exchange of the property involved.

At the trial, respondent stipulated that, as related to the petitioners' respective ages on the dates of the gifts of undivided remainder interests in trusts, the decimal factors applied by petitioners as set out in our findings, are the correct factors under said table III, if this Court determines that such table is applicable in the instant case.

Respondent contends that the allowance of a charitable deduction under paragraph (d) is specifically qualified or restricted by the provisions of paragraph (e) of Income Tax Regs., sec. 1.170–1, and, therefore, the tables referred to in (d) have no application unless, in the first instance, there is an assured gift of an interest in property having an ascertainable value as of the date of the transfer. Respondent also contends that the above-mentioned table III is not applicable in the instant case because under the conditions and circumstances surrounding the transfers involved there is no assurance as to what, if any, beneficial interest in possession and enjoyment Westminster College will ultimately receive and no ascertainable value of the interests transferred, as of the dates of the conveyances.

Respondent further contends that since petitioners conveyed undivided remainder interests in improved real property in trust, while retaining the right to all the rents, issues, and profits therefrom and the right of occupation, possession, and control thereof, without provision for a reserve for depreciation of the improvements or other diminution in value of the trust corpus, the known downward forces of ordinary exhaustion, wear, and tear of the improvements would per se result in a substantial diminution in the value of the trust corpus during the average future lifetime expectancies of petitioners and the survivor. Respondent argues that the principle announced in Rev.

Rul. 60–162, 1960–1 C.B. 376,[4] is equally applicable in the instant case. Further, respondent contends that, under the facts herein, there would be little, if any, remaining value in the improvements at the time of charity's deferred possession thereof under its remainder interest and there is no proof of record as to the respective values of the land and of the improvements thereon and, accordingly, that no amount is allowable as a charitable deduction for any of the years involved in the instant case.

Respondent also contends that in the original trust instrument petitioners reserved the power to sell the property and fix the terms of sale and pursuant to their amendment of 1959 they retained an unbridled power to make substitutions in the trust *res* with either real or personal properties of their own choice, thereby rendering the gifts of remainder interests both unassured and unascertainable in amount and, therefore, not allowable as charitable deductions.

While it is true that various provisions of the internal revenue laws encourage gifts or bequests to educational and charitable causes, we do not read them as permitting deductions for donations which may never reach the charity. Cf. *Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955); *Elise McK. Morgan*, 42 T.C. 1080 (1964). And not only must the charitable gift be assured, but its monetary value must be ascertainable at the critical date, here the various dates of the transfers of fractional interests in real estate to the trust.

The statute here involved allows a deduction based upon the *amount* of a charitable contribution actual "*payment* of which is made within the taxable year" (emphasis supplied). See fn. 5, *infra*. The regulations have long recognized that a gift may be made in property other than money, and in such case the effective date of transfer constitutes the date of payment and the fair market value of the interest on the date transferred governs the amount of the contribution for a tax deduction. This principle is well established. See *Hamm* v. *Commissioner*, 325 F. 2d 934 (1963), affirming a Memorandum Opinion of this Court, and the numerous cases therein cited.

---

[4] Rev. Rul. 60–162, 1960–1 C.B. 376, involved the question of whether a charitable deduction is allowable in the case of a devise in trust of real property having both surface rights and subsurface rights in oil, gas, minerals, etc., with the net yield from the property payable to a private beneficiary for life and remainder to charity, with no provision for deducting from income an amount attributable to depletion and adding the same to corpus in order to maintain the latter intact. It was stated that in the case of a transfer in trust conveying to charity a present interest in income, no deduction is allowable if, by reason of all the conditions and circumstances surrounding the transfer, it appears that charity may not receive the beneficial enjoyment of the interest and that such rule is equally applicable to transfers of future interests to charity. It was held that failure of the trustee to withhold and accumulate for the benefit of charity such reserves for depletion of subsurface resources as are adequate to maintain the corpus intact, constitutes a *pro tanto* diversion of corpus each year to the life beneficiary and a consequent deprivation of the charity's beneficial enjoyment and, therefore, no charitable deduction is allowable.

Generally speaking, in instances of an immediate transfer to charity of a present interest in possession and enjoyment of property, the requirements that the gift is assured and has an ascertainable value, are determined upon the basis of factors and factual circumstances actually known to exist as of the time of the gift. On the other hand, a transfer to charity of a remainder interest in property, following a private use of the property, with charity's interest in possession and beneficial enjoyment deferred to some future time involves a degree of prognostication in the determination of whether the charity's interest is presently assured, acertainable in amount, and severable from the interest in favor of the preceding private use. So long as the statute and regulations recognize gifts of remainder interests so that the present valuation of such interests must be made, difficulties will persist. See *Commissioner* v. *Sternberger's Estate, supra*. The implementing income tax regulations set forth numerous provisions with respect to charitable gifts which qualify for an allowable deduction, and Income Tax Regulations, sec. 1.170–1(e), relating to transfers subject to a condition or a power sets out types of transfers which will not qualify for reasons essentially similar to those contained in the Estate Tax Regulations. It is up to the taxpayer to cast his gift in the proper mold in order to obtain a charitable deduction.

Here, petitioners conveyed to a private trustee remainder fractional interests in improved real property to hold the same in trust for a future beneficial enjoyment by Westminster College. However, under the trust agreement, petitioners reserved to themselves for life (including the lifetime of the survivor of them) the occupation, possession, and control of all property conveyed to the trust, the right to receive and retain the rents, issues, and profits and to determine in the exercise of their sole discretion whether trust property should be sold and the terms of sale. In the event of sale petitioners are entitled to receive the "total net income from the monies so received from the sale price."

While the trust is stated to be "irrevocable" and contains a provision that "no part of the assets delivered to the Trustee shall ever be returned to donors," it also provides that petitioners have power to amend or modify the trust at any time "provided that no amendment or modification shall be made which will result in preventing the Trust Fund from being tax exempt and the donations to the Trust Fund from being deductible from the taxable income of the donors." Also, petitioners carefully provided that they have the sole right to an accounting of the trustee's doings, and "No person other than the donors may require an accounting or bring any action against the Trustee with respect to the said trust and/or its actions as Trustee." Finally, petitioners reserved to themselves the absolute right to remove

any trustee at any time and to appoint a successor with the sole limitation that he "shall not be 'controlled', nor a relative of donors."

Some slight changes were effected by the amendment to the trust dated April 27, 1959, but as indicated by our findings, these related generally to the trustee's powers and rather than detracting from any rights reserved by the petitioners they enlarge petitioners' lifetime control over trust assets and proceeds derived from the sale thereof.

While a provision was added by new paragraph 4(b ii) which might be regarded as furnishing protection to the ultimate charitable remainder beneficiary, we do not regard it in the same light as do petitioners. The provisions of the amendment read as follows:

(b i) To sell, with consent of donors, and convey real property received by the Trustee, and upon such sale the Trustee may, at the discretion of donors, or the survivor of them, transmit the net proceeds of the sale of that interest in the property held in the name of the Trustee, to Westminster College of Fulton, Missouri, or the Trustee may, at the discretion of donors, reinvest said proceeds in other real property whether owned by donors or otherwise, or may deposit such funds in a bank or other institution, or invest the same in accordance with Colorado Statutes pertaining to investments of fiduciaries for the use and benefit of said College.

(b ii) The Trustee shall also have the right, with consent of donors, to exchange real property, an interest in which may have been conveyed to said College, for other real property, and whenever such exchange takes place, or whenever property is sold in which said College holds an interest and the College's share of the proceeds is reinvested in other property, the Trustee shall hold an interest in said new or exchanged property as Trustee for the benefit of said College in an amount or value at least equal to the said interest of the College which was exchanged, sold, or surrendered, so that the interest of the College shall not be diminished, but shall be protected at all times.

Petitioners on brief state: "Thus, the best that grantors could do was to provide that in no event should the replacement property be less in value than the property which was taken out of the trust." However, there is no specification as to the time at which the value of the remainder interest exchanged shall be determined; it could be as of the date of the original gift or as of the date of disposition of the property. The agreement, as amended, is conflicting, confusing, and ambiguous; it lacks definiteness with reference to the respective interests of the life tenants vis-à-vis the charitable remainderman. For example, we are unable to state with any degree of certainty that upon sale or exchange of trust assets the gains realized would go to the life tenant or be held by the trustee for eventual distribution to the remainder interest. Paragraph 2 of the trust agreement, which has not been amended, provides that petitioners reserve to themselves in addition to other rights and powers the right "to receive the total *net income* from the monies so received from the sale price." (Emphasis supplied.)

The only capital gain realized from property transferred to the trust in the years before us occurred from the Pennsylvania Street property exchange in 1959. We know only what was stipulated by the parties: that from this exchange "petitioners had recognizable long-term capital gain in the year 1959 in the amount of $6,552.72, of which 50 percent thereof, or $3,276.37, is includible in their taxable income for such year." Whether this represented the entire gain or an allocated portion thereof is not disclosed by the evidence. When the entire agreement, as amended, is examined we can only conclude that there is considerable doubt as to the proper allocation or distribution of profits derived from the sale or exchange of trust assets and as to the value to be ascribed to replaced property for the purpose of valuing the interest to be received in the exchange. Petitioners may have reserved to themselves all increment in value of property contributed to the trust, depending upon how the entire trust agreement is construed. Since petitioners have the sole discretion to determine whether trust property should be sold and the terms of sale, they could at any time direct a sale or exchange of trust assets at a profit to be received by them if in fact the trust reserved to them such gains. The remainder interest under such circumstances can therefore at best remain constant depending upon the action taken by the petitioners, and the remainder interest may never appreciate in value beyond the date of gift valuation.

However these provisions are construed, they must be regarded as uncertain to say the least. When they are considered together with the petitioners' reserved rights to remove the trustee, to alter or modify the trust even to the extent of naming a new or different charitable remainderman, and to dictate how trust funds shall be invested or reinvested, the difficulty of severing the charitable remainder from the private reserved interests is apparent, and likewise the ascribing of a present value to such remainder becomes well-nigh impossible.

Petitioners' final stipulation that only they shall be entitled to accounting by the trustee and that only the donors may sue the trustee with respect to the trust "and/or its actions as Trustee," make it abundantly clear that the donations to this trust with which we are here concerned possess a will-o'-the-wisp quality; they were evanescent at least and ephemeral at most.

That the parties to the trust agreement recognized that trust assets were in effect still petitioners' property is demonstrated by their handling of the Pennsylvania Street property trade in 1959. The trust agreement had just been amended to provide for the exchange of property in which the trustee had been deeded an interest. The trustee

was authorized by the amendment to exchange real property "an interest in which may have been conveyed to said College, for other real property." In event of such exchange, the trustee "shall hold an interest in said new or exchanged property as Trustee for the benefit . of said College in an amount or value at least equal to the said interest of the College which was exchanged * * * so that the interest of the College shall not be diminished."

At the time of this exchange, the trust held an interest in 50 percent of that property for the remainderman under the trust, and it is stipulated that that property then had a fair market value of $39,426.56, was subject to a mortgage with balance due of $8,426.56, and therefore had a net equity value of $31,000. The new property received in the exchange was 95 Corona Street, valued at $31,000. But the trustee did not receive a 50-percent remainder interest as required by the agreement. Instead the new property was deeded solely to petitioners; they then acting as sole owners, mortgaged the newly acquired property for $18,000 without regard to any interest the trustee or the then remainderman might have; no portion of the mortgage proceeds went to the trustee and he did not join in this transaction. The net equity value of 95 Corona was therefore $13,000 and the trust was subsequently deeded an 87½-percent remainder interest in it. Whatever factor might be applied from actuarial tables to compute the value of the remainder, and considering the fact that a remainder interest in 16⅔ percent of the property was deeded to the trust in 1957 when the property was less valuable and the mortgage balance was higher and 33⅓-percent remainder was deeded in 1959 when the equity was as indicated above, it is clear that no matter what date is looked to in order to value the remainder interest, the trustee did not hold an interest in the new property (95 Corona) in an amount or value at least equal to the interest exchanged. Obviously the trust agreement terms were ignored and petitioners derived a private and personal benefit from their use of trust assets.

While the trust agreement specifies that no part of assets delivered to the trustee shall ever be returned to donors, the exchange transaction clearly shows that this injunction was also honored in the breach not in the observance. True, petitioners thereafter did convey a fractional interest in another property. However, this was apparently as petitioners themselves determined, and as respondent points out on brief, this other property, the Wadsworth Boulevard service station, was quite different in nature when viewed by the eyes of a charitable remainderman who might not come into possession for another 24.72 years.

Whereas the Pennsylvania Street property consisted of land and an old residence (which had no value as indicated by the fact that it was demolished right after the exchange) the property acquired in the exchange and the service station property in which interests were later deeded to the trust both had substantial depreciable improvements. Under the broad powers of control reserved by petitioners, other property of a depreciable or depletable nature, which might be of great benefit to the life tenants, may be substituted in the trust at their whim so that the remainderman cannot be assured of receiving a valuable interest. In the light of the trust provisions here involved, the charitable remainderman would be powerless to complain, to enforce its nebulous rights, or to compel the trustee to account. We know of no method or formula which could be applied to ascertain the date of gift value of such vague remainder interests. Any real assurance that a charitable remainderman would ever receive a contribution via the slim reeds of this trust seem totally lacking.

Petitioners, relying on their reading of the regulations and the application of the actuarial tables therein referred to, urge that the value of the remainder gifts to charity, in trust, is readily ascertainable by simple mathematical calculation. They insist that the form of the gifts is proper and that the remainder interests may be presently (as of date of transfers) valued by actuarial tables set forth in Internal Revenue Service Publication No. 11. In opposition, respondent urges that the use of this method is inexact, inaccurate, and improper because of the nature of the depreciable properties involved, the lack of a reserve to fund depreciation in the trust and thus hold *corpus* intact, and the terms of the trust itself permitting petitioners to substitute property of any sort which may have no presently ascertainable value when considered as a remainder to charity. See Rev. Rul. 60–162, *supra.*

We do not decide the novel question raised by respondent's contention that petitioners' failure to provide for a depreciation reserve in the trust renders the gifts of future interests in depreciable properties unassured and unascertainable in amount. Respondent cites no authority directly in point and petitioners have not produced authority to the contrary. Cf., however, *J. C. Gutman*, 41 B.T.A. 816 (1940). Our disposition of the case makes decision of this question unnecessary. Irrespective of the nature of the trust properties conveyed we must conclude that petitioners are not entitled to the charitable deductions they seek here. They have the burden of overcoming the presumption of correctness of respondent's determination of disallowing the deductions and of proving the value of the alleged charitable donations. This they have failed to do.

We cannot agree with petitioners that under the facts before us the ascertainment of the present value of the gifts claimed as charitable deductions can be correctly made by reference to the actuarial tables in question. The valuation of life and remainder interests presents an extremely complex and difficult problem which cannot generally be solved with ease or exactitude. Generally speaking, the valuation method prescribed in the regulations will be followed "unless the facts present a substantial reason for departure therefrom." *Estate of Irma E. Green*, 22 T.C. 728, 732 (1954). The use of actuarial tables is proper in many cases, but even when prescribed in the Commissioner's regulations such tables need not be controlling. *Estate of John Halliday Denbigh*, 7 T.C. 387 (1946). This is not the ordinary case, however. We cannot under the facts before us apply the usually applicable actuarial tables and the factors therein disclosed and expect to thereby obtain the date of gift value of the remainder interests here involved. We conclude that under the trust agreement before us there is no way in which we can sever the alleged charitable remainder interest from the reserved private interest so to value it with any degree of reliability. There are too many unknown and unusual factors and quantities here to permit the application of the usual valuation procedures, and no special formula has been advanced or suggested for this case. We have detailed the distinguishing circumstances which compel this conclusion in our findings and discussion. Suffice it to say that on the whole record before us, petitioners have retained so many incidents of ownership, such control, and so many rights in and strings to the property they claim has been given to charity, that neither an assured gift to charity has been established nor have petitioners established the date of gift monetary value of the emasculated remainder.[5] Petitioners have used and we feel sure will continue to use and deal with the trust properties for their own personal benefit as they determine. They have so cast the transaction that this is permissible. They have also so cast the transaction that we cannot allow the deductions they seek, and respondent's disallowance is sustained. Cf. *Elise McK. Morgan*, *supra*, and *Burroughs Corporation*, 33 T.C. 389 (1959).

*Decision will be entered under Rule 50.*

---

[5] Although not argued by the parties, we have some doubt that in this case there was actually a "payment" of the claimed charitable deductions in the years before us as required by sec. 170. Certainly the transfers here do not fall within the generally accepted definition of gifts in trust to the effect that "the essence of a gift by trust is the abandonment of control over the property put in trust." *Smith* v. *Shaughnessy*, 318 U.S. 176 (1943). Cf. *Lewis C. Christensen*, 40 T.C. 563 (1963).